**Marisa GOSTONY, Plaintiff,**

v.

**DIEM CORPORATION, an Arizona corporation, and Debra Dencek, an individual, formerly named as D. James, Defendant(s).**

No. 02–CV–2429.

United States District Court,
D. Arizona.

Aug. 28, 2003.

Richard N. Groves, Esq., Law Office of Richard N. Groves, Phoenix, AZ, for Plaintiff.

Matthew D. Koglmeier, Esq., Craig Dwayne Henley, Koglmeier Dobbins Smith & Delgado PLC, Mesa, AZ, for Defendants.

## ORDER

SITVER, United States Magistrate Judge.

Currently pending before the Court are Plaintiff's Motion for Partial Summary Judgment as to Liability, filed on February 18, 2003 (Doc. # 9), and Defendants' Cross–Motion for Partial Summary Judgment, filed on March 17, 2003 (Doc. # 14).

## I. BACKGROUND

On January 13, 2002, Plaintiff filed an amended complaint against Diem Corporation and its President, Debra Dencek ("Defendants"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). [Doc. # 5]. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Diem Corporation is licensed as an Arizona collection agency. [*Id.*]. Ms. Dencek is also an employee of Diem, and regularly collects or attempts to collect debts asserted to be owed to another. [*Id.* ¶ 5]. Plaintiff seeks actual damages, statutory damages of $ 1,000.00 against each defendant, and reasonable attorney's fees and costs.

On March 13, 2001, Plaintiff and a co-renter entered into a rental agreement with "The Village at Stonecreek," for the lease of an apartment. [Doc. # 9, Mot. for Partial Summ. J., Ex. 4]. The Village at Stonecreek was the agent for the owner of the apartment. [*Id.*]. The apartment complex was managed by a management company, whose name was prominently placed within the rental agreement. [*Id.*]. On May 13, 2001, apparently after Plaintiff had moved out of the apartment, the man-

agement sent Plaintiff and her co-renter a "Statement of Deposit Account" demanding move-out charges for carpet replacement and cleaning in the . amount of $ 1,178.80, which amount included a 40% collection fee of $ 336.80. [Doc. # 9, Mot. for Partial Summ. J., Ex. 3].

The management later assigned · or transferred this alleged consumer debt to Defendant Diem solely for collection purposes. [Doc. # 9, Mot. for Partial Summ. J., SOF ¶ 6]. On June 6, 2002, Ms. Dencek sent Plaintiff a collection demand letter on Diem Corporation letterhead demanding payment of $ 1,178.80. [*Id.*, SOF ¶ 7]. Ms. Dencek signed the letter, "D. James." Diem Corporation sent Plaintiff a subsequent collection letter dated June 26, 2002, signed "Collection Agent." [*Id.*, SOF ¶ 16]. Defendants reported the alleged debt on Plaintiff's consumer credit report in September 2002 without noting whether the debt had been disputed.[1] [*Id.*, SOF ¶ 20].

Plaintiff filed an initial complaint on December 2, 2002 (Doc. # 1), which she amended on January 13, 2002, as noted above. Defendants filed its Response to Plaintiff's Motion for Partial Summary Judgment as to Liability and Diem's Cross–Motion for Partial Summary Judgment on March 17, 2003. [Doc. # 14]. On April 1, 2003, Plaintiff filed her reply to Defendants' response. [Doc. # 15].

## II. SUMMARY JUDGMENT

Summary judgment may be granted if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50, 106 S.Ct. 2505. In a civil case, the question is:

whether a fair-minded jury could return a verdict for the plaintiff on evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. 2505. The court must resolve all ambiguities and draw all reasonable inferences from the underlying facts in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Plaintiff alleges that Defendants' collection activities violated multiple sections of the FDCPA, as is discussed below.

### A. Defendants' demand for a 40% collection fee

The $ 1,178.80 debt claimed by Defendants against Plaintiff included a "collection fee" of $ 336.80, calculated at forty percent of the balance due claim of $ 842.00. [Doc. # 9, Mot. for Partial

---

1. As is discussed below, Plaintiff argues that her father wrote Defendants a letter dated July 15, 2002, disputing the debt. Plaintiff wrote a letter dated October 28, 2002, advising Defendants that she was disputing her debt.

Summ. J., Ex. 3]. Plaintiff argues that the forty percent collection fee violated the FDCPA, 15 U.S.C. §§ 1692e(2)(A) and (B) and 1692f(1), alleging: (1) that the collection fee is not authorized by the agreement creating the debt; (2) the fee is not expressly authorized by Arizona law; (3) the fee is not recognized by Arizona case law; and (4) Defendants' demand for a forty percent collection fee is a false representation and deceptive means to attempt to collect a consumer debt.

Pursuant to 15 U.S.C. § 1692e(2)(A) and (B):

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of -

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

Title 15 U.S.C. § 1692f(1) provides that:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

As noted, Plaintiff argues that her lease contract did not provide for collection of debt collection fees in the express amount of forty percent of the debt balance. She cites to language in the agreement requiring that "I/We agree: ... (4) that to enforce this Agreement, the prevailing party may recover reasonable attorney's fees and other normal and customary costs of collection including but not limited to collection agency fees and court costs; ..." [Doc. # 9, Mot. for Partial Summ. J., Ex. 4, p. 4]. Plaintiff contends that the forty percent collection fee assessed by Defendants is not reasonable, that Arizona statutory law does not expressly provide for collection of fees at this rate, that Arizona courts would not find that rate to be reasonable, and that the demand for such fee is a false representation in the attempt to collect a debt.

Defendants counter that Plaintiff expressly agree to customary collection fees of up to *fifty* percent the outstanding debt. Exhibit 3 to Defendants' response is a Resident Lease Buy-out/Early Termination Fee & Charges Agreement ("charges agreement"), executed by Plaintiff on March 13, 2001, the same date she entered into the lease agreement. The charges agreement requires:

To enforce this agreement, the prevailing party may recover reasonable attorney's fees and other normal and customary costs of collection including but not limited to collection agency fees (up to fifty-percent of the outstanding balance) and court costs.

Notwithstanding any provision contained in my rental agreement dated 3/13/01, this Lease Buyout/Early Termination Agreement has been accepted by me and management.

[Doc. # 14, Ex. 3]. The charging agreement appears to apply when the tenant breaches her rental agreement for any reason, including for nonpayment for damage done to the apartment through the move-out date. In light of this evidence, unaddressed by Plaintiff, the Court concludes there is a genuine issue of fact regarding Plaintiff's argument that she did not contractually agree to pay a collection

fee of forty percent. This fact issue is relevant also to Plaintiff's remaining claims regarding the collection fee.

However, as Plaintiff argues, both the lease agreement and the charges agreement require that "the prevailing party" will recover collection agency fees. Plaintiff contends that because there has been no determination of a "prevailing party," Defendants' letter violated both the agreement and the FDCPA. Plaintiff cites in support of her argument *Axtell v. Collections, U.S.A., Inc.*, CIV 02–0536–PHX–DKD, 2002 U.S. Dist. LEXIS 23019 (D.Ariz. Oct. 22, 2002), in which the court addressed a claim asserted under the FDCPA regarding the plaintiff's early termination of a lease agreement and a demand for attorney's fees by a debt collections agency. The lease agreement required that "the prevailing party" in any "legal action to enforce compliance with this Rental Agreement" "may be awarded court costs and reasonable attorney's fees." *Id.* at *5. The court noted that a "legal action" generally refers to litigation, and under the FDCPA, to a judicial proceeding. *Id.* Accordingly, the court concluded that "[b]ecause there has been no determination of who is the "prevailing party" entitled to attorney's fees, the Court finds that the amount was not authorized by either the agreement or by statute." *Id.* at *5–6.

In the instant action, the agreement language refers only to "prevailing party," without further reference to legal action. Nevertheless, the Court agrees with Plaintiff that it is unreasonable to assume that a party may unilaterally proclaim itself a "prevailing party" and that the term by necessity implies that the party "prevailed" in some judicial proceeding. *See e.g., All American Distributing*

*Co., Inc. v. Miller Brewing Co.*, 736 F.2d 530 (9th Cir.1984) (addressing the interpretation of the term "prevailing party" under various Arizona statutes, all of which implicate litigation). The fact that the agreements refer to "costs of collection" together with "reasonable attorney's fees" and "court costs" strongly indicates that the agreement anticipated that the term "prevailing party" refers to a party in a judicial proceeding. Accordingly, because there was no judicial proceeding at the time of Defendants' debt collection letters subsequent to which Defendants could be termed a "prevailing party," their claim for collection fees was not authorized by either the lease agreement or the charges agreement, in violation of § 1692f(1). *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir.2003) ("a collector who collected a charge unauthorized by the debt agreement or by law, even by accident, would violate § 1692f(1)."); *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994) (lender allegedly obtained financial protection policy and passed cost to borrower; court held that contract only authorized lender to purchase loss or damage insurance policy and that if allegation were true, the lender would have violated § 1692f(1)).

Therefore, Plaintiff's motion for partial summary judgment will be granted on her claim that the collection fee was not authorized by the agreement creating the debt, and thus violated 15 U.S.C. § 1692f(1). Plaintiff's motion will be denied as to all other claims relating to the 40% collection fee.

## B. The June 6, 2002 collection letter

Plaintiff complains that Defendants' collection letter dated June 6, 2002 would confuse the least sophisticated debtor[2] be-

---

**2.** Certain alleged abusive conduct in violation of the FDCPA is evaluated according to the "least sophisticated debtor" standard, an ob-

jective standard that is lower than that applied to a "reasonable debtor." *Swanson v.*

cause the letter "implies that the [debtor] can dispute the alleged consumer debt by '*calling* the office,' but later expressly states at the bottom of the page that her dispute must be submitted in writing." [Doc. # 9, Mot. for Partial Summ. J., p. 14]. Plaintiff contends this contradiction in the letter would confuse the least sophisticated debtor regarding her rights in violation of 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692g(a).

Title 15 U.S.C. § 1692e(5) and (10) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> .    .    .    .    .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> .    .    .    .    .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692g(a) requires a debt collector to provide a consumer with written notice advising her of, among other information, the amount of the debt, the name of the creditor, and that she has a 30–day period during which to dispute the validity of the debt.

The text of Defendants' June 6, 2002 letter to Plaintiff is:

> If you continue to ignore this obligation, you will run the risk of having this account placed on your credit as an "unpaid collection account." Other creditors will view this information negatively and possibly deny you future credit or residency.

You may use the enclosed envelope for your payment in full. If you have any questions or concerns with regard to this debt, or you wish to pay via check by phone or credit card, call the office Monday through Friday 8am—5 pm or fill out the information at the bottom and return the notice.

The letter was signed "Sincerely, Ms. D. James, Manager." At the bottom of the page, the following additional notice was printed in the same size typeface as the rest of the letter:

> Unless this account, or any portion thereof, is disputed within 30 days from receipt of this notice, we will assume this debt to be valid. If you dispute this debt, or any portion thereof, within this 30 day time period we will furnish, at your written request, a verification of the debt or the name and address of the original creditor. This notice is being sent to you by a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

[Doc. # 9, Mot. for Partial Summ. J., Ex. 1].

■ Language within a debt collection notice that " 'overshadows or contradicts' other language informing a consumer of her rights, ... violates the [FDCPA]." *Russell v. Equifax, A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996) (quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991)). " '[T]he juxtaposition of two inconsistent statements' renders the notice invalid under § 1692g." *Id.* Contrary to Plaintiff's argument, however, the notice at issue here is not inconsistent. The invitation to Plaintiff to call the Defendants' office extends only to "questions or concerns" regarding the debt or to Plaintiff's decision to pay the debt. The 30–day validation

*Southern Oregon Credit Serv., Inc.,* 869 F.2d     1222, 1227 (9th Cir.1988).

notice specifically addressed Plaintiff's option to dispute the debt. Plaintiff was not required to believe either statement at the peril of confusion regarding the other. *See Terran v. Kaplan,* 109 F.3d 1428, 1434 (9th Cir.1997) ("the request [in the debt collection notice] that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt."); *Lerner v. Forster,* 240 F.Supp.2d 233 (E.D.N.Y.2003) (discussing case law that addresses "the distinction between resolving and disputing debt[,]" and declaring that "[i]t does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted."). Plaintiff's argument that the least sophisticated debtor could have been misled by the letter to conclude that she could dispute the validity of her debt by making a telephone call fails for the same reason.

Plaintiff's motion, as it relates to Defendants' June 26, 2002 letter, will therefore be denied.

**C. The June 26, 2002 collection letter**

Plaintiff alleges that the Defendants' collection letter dated June 26, 2002:(1) "created a false sense of urgency deceiving the least sophisticated consumer into waiving her statutory rights"; (2) threatened to take action that Defendants could not legally take; and (3) improperly implied a threat to garnish Plaintiff's salary. [Doc. # 9, Mot. for Partial Summ. J., pp. 14–18].

Defendants' June 26, 2002 collection letter was written on Diem Corporation letterhead and addressed to Plaintiff. The text of the letter read as follows:

> May we suggest you have your attorney determine your liability for this debt. If you do not wish to seek the advice of an attorney, you must contact this office and arrange settlement of your obligation to our client.

> If you fail to make agreeable arrangements with this office, you subject yourself and all those responsible for this debt to further collection action which may include having a lawsuit filed against you and/or garnishment of your wages.

> If you wish to pay with a check by phone, Visa or Mastercard, call (602) 923–3131.

The letter was signed "Collection Agent." [*Id.,* Ex. 2]. The following statement was printed at the bottom of the page: "[t]his letter is being sent to you by a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."

*1. Plaintiff's claim that the letter created a false sense of urgency*

Plaintiff contends that Defendants' June 26, 2002 letter violated §§ 1692e(5) and 1692g by using improper language that could induce the least sophisticated consumer to conclude that she must immediately dispute the consumer debt, contradicting the requirement of § 1692g that a consumer have 30 days from receipt of a collection letter to assert such a dispute.

As is noted above, Title 15 U.S.C. § 1692e(5) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> .    .    .    .    .

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

Section 1692g(a)(3) requires a debt collector to send a consumer written notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector[.]"

■ As noted, Defendants sent Plaintiff a letter dated June 6, 2002 notifying her that she had 30 days from receipt of that letter to dispute the collection demand. Plaintiff interprets the June 26, 2002 letter as implying that her 30–day dispute period had expired, even though only approximately 19 days of the period had passed, and that a "least sophisticated consumer" would think that she must immediately contact the Defendants' office to arrange payment of the debt. However, there is nothing about the June 26 letter that imparts the sense of urgency attributed to it by Plaintiff. In the letter, the "Collection Agent" first suggested that the Plaintiff seek the advice of an attorney, a process that even the least sophisticated consumer would realize would take some time. If that suggestion were not taken, the Collection Agent cautioned the Plaintiff that she "must contact this office and arrange settlement of your obligation to our client." The suggestion did not say when an attorney should be contacted. Further, the Collection Agent instructed Plaintiff that if she failed "to make agreeable arrangements with this office, you subject yourself and all those responsible for this debt to further collection action which may include having a lawsuit filed against you and/or garnishment of your wages." This language neither states nor implies a timeliness requirement, and does nothing to contradict the June 6, 2002 notification of a 30–day dispute period, even interpreting the language as would the least sophisticated consumer. *See Terran v. Kaplan,* 109 F.3d 1428, 1433–34 (9th Cir.1997) (request that the debtor immediately telephone debt collector did not contradict the admonition that debtor had 30 days in which to contest the validity of the debt).

Accordingly, Plaintiff's motion will be denied as to her claim that Defendants' collection letter dated June 26, 2002 contradicted the 30–day period for dispute, in violation of 15 U.S.C. §§ 1692e(5) and 1692g.

### 2. Plaintiff's claim that the letter improperly threatened legal action

Plaintiff further argues that Defendants' June 26, 2002 letter would lead the least sophisticated consumer to conclude that if she did not immediately contact the debt collector to arrange settlement, she would be subjected to further debt collection activities, including legal action such as a lawsuit and/or garnishment of her wages. Plaintiff explains that this language "was a threat to take a course of action [filing a lawsuit] that Defendants could not take for another 8 days, until the expiration of her statutorily provided 30 day dispute period . . . ." [Doc. # 9, Mot. for Partial Summ. J., pp. 16–17]. This argument lacks merit, again because the allegedly offensive language does not include any deadlines. Plaintiff mistakenly concludes that because the letter states that Plaintiff "*must* contact this office and arrange settlement of your obligation to our client," this somehow also implies the requirement that she must do so *immediately.*

Plaintiff's motion as to this claim will be denied.

### 3. Plaintiff's claim that the letter improperly threatened garnishment

Plaintiff asserts that Defendants' warning in the June 26, 2002 letter regarding the risk that failure to make agreeable arrangements might expose her to garnishment of her wages violated §§ 1692g and 1692e(10) because Defendants had not

obtained a judgment against Plaintiff, which is a prerequisite to garnishment of wages. This, argues Plaintiff, was an unconscionable collection activity and a use of false representation and deceptive means to collect an alleged consumer debt.

Again, Title 15 U.S.C. § 1692e(10) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> .        .        .        .        .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

■ As noted above, the Defendants' letter stated "[i]f you fail to make agreeable arrangements with this office, you subject yourself and all those responsible for this debt to further collection action which may include having a lawsuit filed against you and/or garnishment of your wages." Plaintiff argues that this was a "threat to take a course of action that Defendants could not take until they obtained a judgment against Plaintiff...." [Doc. # 9, Mot. for Partial Summ. J., p. 18]. In fact, this cautionary language advised Plaintiff that if the debt were not settled, at some future point a lawsuit *may* be filed, and that garnishment of wages *may* also be instituted. Even the least sophisticated debtor would not conclude from this language that Defendants presently planned to attempt to garnish her wages, or intended to do so at any time without having first obtained a judgment. *See Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996) (no false representation violating § 1692e(10) where collection notice informed plaintiff that she had an unpaid debt and failure to pay might adversely affect her credit).

For this reason, Plaintiff's motion will be denied as to her claim that Defendants' June 26, 2002 letter threatened garnishment in violation of 15 U.S.C. §§ 1692e(10) and 1692g.

### D. Defendants' knowledge that Plaintiff's debt was disputed

Plaintiff contends that Defendants violated 15 U.S.C. §§ 1692e(8), 1692e(2)(A), and 1692e(10) by failing to notify credit reporting agencies that her debt was disputed. Section 1692e(8) prohibits a debt collector from "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Plaintiff states that her father wrote Defendants a letter dated July 15, 2002, in which he advised them that Plaintiff's alleged debt was disputed. [Doc. # 9, Mot. for Partial Summ. J., p. 19]. Additionally, in her Reply, Plaintiff attached as Exhibits 1 and 2 a copy of a letter she wrote to Debra Dencek at Diem Corporation dated October 28, 2002, with a U.S. Postal Service certified mail receipt dated November 1, 2002. [Doc. # 15, Exs. 1, 2]. In her October 28, 2002 letter, Plaintiff stated *"I am disputing and challenging this alleged debt,* and demanding not only that you conduct your own investigation into the accuracy and completeness of this claim against me, but also provide me with validation of this alleged debt to include, but not necessarily be limited to, all correspondence from your client Village at Stonecreek Apartments that would substantiate such a claim." [Doc. # 15, Ex. 1].

Defendants concede having received notification from someone claiming to be Plaintiff's father, and fail to specifically

address Plaintiff's October 28, 2002 letter. In her affidavit, Ms. Dencek averred that a person "claiming to be Plaintiff's father mailed a letter to Diem disputing the debt," but stated that "at no time has Diem received any correspondence or phone calls from Plaintiff or her authorized representative disputing the debt before placing the debt on Plaintiff's credit history." [Doc. # 14, Ex. 2]. Ms. Dencek noted that Diem placed the debt on Plaintiff's credit history in September 2002. [*Id.*]. Her affidavit does not, however, discuss Plaintiff's October 28, 2002 letter or state that Diem had notified the credit reporting agencies of Plaintiff's dispute of her debt. [*Id.*].

■ Section 1692e(8) requires that A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

.    .    .    .    .

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

As noted, Plaintiff argues that after receiving the July 15, 2002 letter from "Henry Gostony" disputing Plaintiff's debt, Defendants were obligated by § 1692e(8) to timely report that Plaintiff's debt was disputed, because having received the letter, Defendants either knew or should have known the debt was disputed. Summary judgment on this issue is not merited. Questions of fact remain regarding whether Defendants were aware of who "Henry Gostony" was and whether they could have known he was authorized to act on Plaintiff's behalf, if in fact he was. Moreover, Plaintiff's evidence demonstrates that

credit reports for Plaintiff dated October 18, 2002 and November 7, 2002 do not appear to list the debt as disputed, but a report dated January 11, 2003 indicates that the Plaintiff had disputed the account information. [Doc. # 9, Exs. 6, 7, 10]. One plausible conclusion from this evidence is that Defendants timely reported Plaintiff's debt as disputed once it received Plaintiff's October 28, 2002 letter.

Although Plaintiff asserts that Defendants' actions constitute a violation also of §§ 1692e(2)(A), and 1692e(10), she merely realleges the violation of § 1692e(8), which is not sufficient to constitute a violation of §§ 1692e(2)(A), and 1692e(10). *See Dutton v. Wolhar*, 809 F.Supp. 1130, 1140 (D.Del. 1992).

Plaintiff's motion as it relates to this claim will accordingly be denied.

### E. Misrepresentation as to the Identity of the actual creditor

Plaintiff alleges that the Defendants' collection letters dated June 6, 2002 and June 26, 2002 misrepresented the actual creditor of Plaintiff's alleged consumer debt. [Doc. # 9, Mot. for Partial Summ. J., p. 20]. Because Defendants listed the creditor in these letters as "Village at Stonecreek Apts.," the name of the apartment complex, instead of John W. and Joyce I. Nolan, the actual owners of the specific apartment unit Plaintiff rented, Plaintiff argues that Defendants made a false representation in an attempt to collect a debt, in violation of § 1692e(10), § 1692f, and § 1692g. As noted earlier, Title 15 U.S.C. § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Section 1692f requires that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Section 1692g governs the vali-

dation of debts. Plaintiff contends that Defendants' actions in "concealing the true name of the creditor" violated the FDCPA because such actions would have prevented the least sophisticated debtor from enforcing her federal rights through civil action, and prevented her from enforcing her rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681s—2(b). [Doc. # 9, Dfs.' Resp. to Pl's. Mot. for Partial Summ. J., pp. 20–21].

Defendants counter that Plaintiff's claim that Defendants had deceived her by misrepresenting the actual creditor's identity is "simply a farce," noting that Plaintiff had filed a civil action against the Nolans in Scottsdale Justice Court in August 2002, and therefore were aware of who actually owned the dwelling. [Doc. # 14, Mem. of Points and Authorities, p. 9; Ex. 5].

The Court observes that Plaintiff's rental agreement (Doc. # 9, Pl.'s Ex. 4) appears to list "The Village at Stonecreek" as agent of the owner of the apartment in question, Apartment Number 235. The rental agreement identifies Bernard/Allison Management Services, Inc. as the agent and management company. Page four of Plaintiff's rental agreement contains the statement: "[a]ll property and Bernard/Allison Management Services, Inc. employees represent the Owner with regard to the rental of your apartment and all terms and conditions contained in this Rental Agreement ...." [Id.]. The rental agreement was signed by Plaintiff (and her co-resident) and the management's representative, not the actual owner of the Apartment 235. [Id.]. The rental agreement further established that management was entitled to terminate the agreement, accept rental payments, and authorize the conversion of the rental term to a month-to-month term. [Id.].

Title 15 U.S.C. § 1692a defines the term "creditor" as:

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment of transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

Under the same section, the term "debt" is defined as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

■ The definition of "creditor" thus encompasses the Village at Stonecreek because the rental agreement specifies that this entity rented the apartment to Plaintiff and required Plaintiff and her co-renter to submit rent payments to it. Moreover, Defendants have raised a genuine issue of material fact regarding Plaintiff's knowledge of the identity of the owners of unit number 235, John and Joyce Nolan. [Doc. # 14, Defs.' Resp., p. 7].

Plaintiff's motion will be denied as to her claim that Defendants' letters misrepresented the "creditor" of her debt in violation of 15 U.S.C. §§ 1692e(10), 1692f and 1692g.

**F. Expungement documents**

Plaintiff contends that Defendants ignored express instructions from the creditors' attorney to discontinue further debt collection activity, to notify the appropriate credit reporting agencies, and to expunge from Plaintiff's credit report the relevant notations of delinquency, all in violation of § FDCPA 1692f. [Doc. # 9, pp. 21–22]. Plaintiff further contends that Defendants continuously refused to provide her attorney with a copy of expungement docu-

ments, and argues this "is the most unconscionable collection activity that counsel for Plaintiff can imagine, and is unquestionably a violation of § 1692f." [Doc. # 9, Mot. for Partial Summ. J., p. 23].

Plaintiff's Statement of Facts alleges the following: (1) on December 24, 2002, Defendants received from the creditors' attorney written directions to expunge any notice of Plaintiff's debt from Plaintiff's consumer report, with the instruction to provide a copy of removal documents to Plaintiff's attorney; (2) as of January 11, 2003, Plaintiff's credit report did not indicate the debt had been expunged; and (3) as of February 10, 2003, Defendants had not provided Plaintiff's counsel with a copy of the expungement documents. [Doc. # 9, SOF ¶¶ 22–24].

In response, Defendants state that they were not informed of the existence of litigation between Plaintiff and the creditors until receiving a letter dated December 24, 2002 from the creditors' attorney, which was not postmarked until December 30, 2002. [Doc. # 14, SOF ¶ 15 and Ex. 6]. Debra Dencek's affidavit avers that upon receipt of the letter, she "promptly requested the removal of the debt from Plaintiff's credit report." [Doc. # 14, Ex. 2].

■ Defendants have raised a genuine issue of material fact. Summary judgment for Plaintiff on the issue of expungement of her credit report is improper.

## G. Use of alias or pseudonym

Plaintiff further contends that Debra Dencek's use of the alias "D. James, Manager" in Defendant's collection demand letter dated June 6, 2002, was a false representation and deceptive means of attempting to collect a debt in violation of the FDCPA §§ 1692d, 1692e, 1692e(9) and 1692e(14). [Doc. # 9, Mot. for Partial Summ. J., p. 23]. Defendants counter that the claim lacks merit because the letter

clearly indicated that Diem Corporation was the actual debt collector, not its employee "D. James," and that State policies provide for the use of pseudonyms by debt collectors. [Doc. # 14, p. 7].

Title 15 U.S.C. § 1692d prohibits harassing or abusive debt collection practices by a debt collector. Section 1692d(6) cites as violative conduct "the placement of telephone calls without meaningful disclosure of the caller's identity." Section 1692e prohibits false, deceptive or misleading representations in debt collection. Section 1692e(9) specifies that "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval" violates the FDCPA. Section 1692e(14) further defines as prohibited conduct "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Plaintiff cites *Supan v. Medical Bureau of Economics, Inc.*, 785 F.Supp. 304 (D.Conn.1991) as direct authority for her position. In *Supan*, the district court noted that letters sent to the plaintiff from a debt collector were signed "in the names of persons who were not employed by the [debt collector]. The mere fact that the letters were signed in the names of nonexistent persons is sufficient to establish liability under the FDCPA." *Id.* at 305. This abbreviated opinion, however, does not establish whether the use of names involved an alias or pseudonym by a debt collector. Plaintiff also cites *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864 (D.N.D.1981), in which the court addressed the use of an alias in telephonic debt collection calls, concluding the "use of an alias

by a telephonic collector is conduct the natural consequence of which is to harass, oppress or abuse the debtor in connection with the collection of the debt." *Id.* at 874. Additionally, Plaintiff cites *Hartman v. Meridian Financial Services, Inc.*, 191 F.Supp.2d 1031, 1045 (W.D.Wis.2002), where a debt collection agency attempted to collect a debt under a false name in an attempt to appear to be an in-house. billing service.

The Court finds the case law cited by Plaintiff unpersuasive. Instead, the Court concludes that *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389 (6th Cir.1998) and *Johnson v. NCB Collection Services*, 799 F.Supp. 1298 (D.Conn.1992) provide a better reasoned approach to the question. In *ACB,* a debt collection agency was hired by American Express Travel Related Services Company to collect on past-due payments from a cardholder. ACB sent a collection letter to the cardholder signed by "M. Hall." 135 F.3d at 396. The name "M. Hall" was not assigned to a specific ACB employee, but was used to identify the status of an account. *Id.* The Sixth Circuit held that use of a pseudonym survived the plaintiff's challenge pursuant to § 1692e(10). In so holding, the court analogized the issue to that analyzed by the district court in *Johnson v. NCB Collection Services,* discussed below. The court concluded that the use of the alias resulted in no harm or prejudice, because the only person who became aware of the plaintiff's account status through the use of an alias was the collection agency, which was already aware of it. *Id.* at 401.

In *Johnson v. NCB Collection Services,* a debt collection agency's demand letter was written on company letterhead, but concluded with the printed name of "Althea Thomas, Account Supervisor." 799 F.Supp. at 1300. The name "Althea Thomas" was an alias assigned to an NCB employee, whose job responsibilities did not include personal contact with individual debtors. Moreover, when debtors called the customer service telephone number listed on demand letters on which the name Althea Thomas appeared, the call would not necessarily be directed to the employee using that alias, but instead to the next available representative. *Id.* The district court found no explicit prohibition within the FDCPA on the use of assigned aliases in written communications. *Id.* at 1302. Addressing § 1692d(6), the court noted that the FDCPA allowed the use of aliases in the placement of telephone calls, so long as such calls were subject to "meaningful disclosure of the . caller's identity." *Id.* at 1303. After observing that telephone calls to collect debts offer greater potential for abuse or harassment than written communications, the court reasoned that "it would be anomalous to interpret the FDCPA to prohibit broadly any use of assigned aliases in written communications." *Id.* at 1303–04. The court further reasoned that "the use of an assigned alias or office name, even when considered from the standpoint of the least sophisticated debtor, does not misrepresent the amount of a debt, the consequences of its nonpayment, nor the rights of the contacted debtor." *Id.* at 1304. Additionally, the court observed that the use of aliases and office names was well-established to protect collection agency employees, concluding that "[t]he burden to an ethical debt collector that would result from prohibiting the use of assigned aliases by designated employees clearly outweighs any abstract benefit to a debtor that such a prohibition might yield." *Id.* Ruling on Plaintiff's motion to alter and for reconsideration, the *Johnson* court further held that the use of the alias "Althea Thomas" by the defendant collection agency did not violate § 1692e(9), because the "source" of the disputed letter clearly was the collection agency, NCB,

and thus the use of an alias in that context was irrelevant. *Id.* at 1307.

■ Following the reasoning of the *Johnson* court, this Court concludes that Defendants' use of the pseudonym "D. James" was not in violation of 15 U.S.C. §§ 1692d or 1692e. Accordingly, Plaintiff's motion on this claim will be denied.

## H. Affirmative defense of bona fide error

Defendants request that "[t]o the extent that the Court concludes [Defendants'] actions in this matter were a violation of the FDCPA, Defendants submits (sic) that any violation resulted from the lack of candor by Plaintiffs (sic)." [Doc. # 14, Defs.' Resp. to Pl.'s Mot. for Partial Summ. J., pp. 10–11].

■ Title 15 U.S.C. § 1692k(c) requires that:

> **(c) Intent**
>
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the bona fide error defense." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982). The bona fide error defense "applies almost exclusively to clerical errors which somehow manage to slip through procedures designed to catch them." *Irwin v. Mascott*, 112 F.Supp.2d 937, 959 (N.D.Cal.2000). Defendants do not expressly argue that they maintain procedures reasonably adapted to prevent error. In her affidavit, Ms. Dencek's affidavit avers that her office is a member of a debt collector's association that provides daily e-mail updates about developments within the industry, including changes in the law, and that the organization provides to her office schedules of monthly classes and literature providing updates on the FDCPA, among other issues. [Doc. # 14, Ex. 2]. She does not explain whether office employees are required to review the e-mails or to enroll in any of the classes offered; moreover, even if implemented, such safeguards are apparently directed to avoid mistakes of law. Significantly, Defendants do not argue that if errors were made in Plaintiff's matter, they were unintentional clerical errors. Because Defendants have not shown by a preponderance of the evidence that they maintain procedural safeguards or that any errors made were clerical, they have failed to establish the bona fide error defense.

## I. Defendants' Cross–Motion for Partial Summary Judgment

As noted, on March 17, 2003, Defendants filed a Response to Plaintiff's Motion for Partial Summary Judgment as to Liability and Diem's Cross–Motion for Partial Summary Judgment ("Response and Cross–Motion"). [Doc. # 14]. Plaintiff did not respond to Defendants' cross-motion in her reply. [Doc. # 15]. In the Response and Cross–Motion, Defendants request that summary judgment be granted in Defendants' favor regarding "(1) Plaintiff's 15 U.S.C. § 1692(e) [sic] claim, because Defendants made no representation nor can any implication be made that Defendants utilize any false, deceptive or misleading representations or means in connection with the collection of Plaintiff's debt; and (2) Plaintiff's 15 U.S.C. § 1692(f)(1) [sic] claim, as the collection fees at issue in this case were authorized by two written agreements signed by Plaintiff." [Doc. # 14, Resp. and Cross–Mot., p. 2]. Later in the motion, Defendants inexplicably make the argument that Plaintiff's motion should be denied because there is "no basis in law for Plaintiff's

claims as set forth in his [sic] Motion," *and* that "Plaintiff's motion fails as issues of fact are clearly in dispute." [*Id.,* p. 2]. As is noted above, summary judgment for either party is not proper where genuine issues of material fact remain in dispute. Fed.R.Civ.P. 56(c).

Plaintiff has asserted numerous claims under both § 1692e and § 1692f. Defendants have failed to identify which "claim" of Plaintiff's numerous claims asserted pursuant to each of these sections they believe to be subject to summary judgment. Because the scope of Defendants' request for summary judgment is vague and defined inconsistently, the Cross–Motion will be denied in its entirety.

## IV. CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability (Doc. # 9) is **GRANTED** solely as to Plaintiff's claim that the collection fee was not authorized by the agreement creating the debt, in violation of 15 U.S.C. § 1692f(1);

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability (Doc. # 9) is DENIED as to all remaining claims;

**IT IS FURTHER ORDERED** that Defendants' Cross–Motion for Partial Summary Judgment (Doc. # 14) is DENIED.