# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 04-1074 & 04-1455

ELIZABETH KORT, individually and
on behalf of all others similarly situated,

*Plaintiff,*

*v.*

DIVERSIFIED COLLECTION SERVICES, INC.,
a California corporation,

*Defendant-Appellee.*

Appeal of:

HATTIE HARRIS-ALLEYNE and
LINDSAY MILLER,

*Intervenors-Appellants.*

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 0689—**Robert W. Gettleman**, *Judge.*

_____

ARGUED NOVEMBER 2, 2004—DECIDED JANUARY 10, 2005

_____

Before POSNER, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Elizabeth Kort, representing a
class of individuals, sued Diversified Collection Services
("DCS"), claiming that DCS violated the Fair Debt Collec-

tion Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by mailing her and others misleading garnishment notices. The debts at issue were student loans governed by the Higher Education Act ("HEA"), 20 U.S.C. §§ 1070, *et seq.* The text of the garnishment notice was taken entirely from a form issued by the Department of Education ("DOE"), which is the federal agency charged with regulating under the HEA. Given DCS's reliance on the DOE form, the district court ruled that DCS was entitled to an affirmative defense under the FDCPA known as the "bona fide error" defense and thus granted DCS summary judgment on this issue. Kort is no longer prosecuting the case, but Hattie Harris-Alleyne and Lindsay Miller have intervened to appeal the grant of summary judgment to DCS on behalf of themselves and the corresponding class. We affirm.

## I.

Elizabeth Kort procured a student loan under the HEA's Federal Family Education Loan Program. The Illinois Student Assistance Commission ("ISAC")[1] guaranteed the loan. ISAC hired DCS to collect delinquent debts. As of February 2000, Kort's debt to ISAC, totaling approximately $1,600.00, was delinquent. Consequently, DCS, as an agent

---

[1] Because of the need to use several combinations of letters to identify laws, agencies, and parties, we provide a list for quick reference:

> DCS    = Diversified Collection Services
>
> DOE    = Department of Education
>
> FDCPA = Fair Debt Collection Practices Act
>
> HEA    = Higher Education Act
>
> ISAC   = Illinois Student Assistance Commission

of ISAC, took steps under the HEA to collect Kort's debt for ISAC, specifically, to garnish her wages.

The HEA permits guarantors, such as ISAC, to administratively garnish (i.e., without going to court) a debtor's wages. *See* 20 U.S.C. § 1095a. Before wages can be administratively garnished, however, the guarantor, or its agent, must give the debtor at least thirty days' notice. *See* 20 U.S.C. § 1095a(a)(2). Attempting to comply with this requirement, DCS mailed Kort a notice—dated February 5, 2000, and postmarked February 7, 2000—to inform her of ISAC's intent to garnish her wages unless she took certain actions by March 6, 2000. Also, attached to the notice was a response form, which enabled Kort to claim exemptions and request a hearing in response to the garnishment notice.

One such exemption from wage garnishment is the HEA's so-called unemployment exemption. *See* 20 U.S.C. § 1095a(a)(7). The HEA mandates that, for a debtor who was "involuntarily separated" from the debtor's employment and then "reemployed," "no amount may be deducted from the disposable pay of [the debtor] until [the debtor] has been reemployed continuously for at least 12 months." *Id.* Thus, a debtor who successfully invokes this exemption can avert wage garnishment during the first twelve months on the job. Pursuant to its grant of regulatory authority, *see* 20 U.S.C. § 1082(a)(1), the DOE amplified this point in a regulation stating: "The guaranty agency may not garnish the wages of a [debtor] whom it *knows* has been involuntarily separated from employment until the [debtor] has been reemployed continuously for at least 12 months." 34 C.F.R. § 682.410(b)(9)-(i)(G) (emphasis added).[2] In order for a guarantor to have the

---

[2] This regulation was originally designated as 34 C.F.R. § 682.410(b)(10)(i)(G), but was later re-designated as 34 C.F.R.

(continued...)

needed knowledge that a debtor is entitled to this exemption, the debtor must ordinarily come forward, according to the DOE's interpretation of the exemption, with information to substantiate that the debtor qualifies for the exemption. *See* Federal Family Education Loan Program: Final Regulations, 59 Fed. Reg. 22462, 22474 (Apr. 29, 1994).

To ensure compliance with the HEA and the corresponding regulations, the DOE drafted a form notice for guarantors—and thus for their agents—to use in initiating garnishment proceedings. The form is entitled "Notice Prior to Wage Withholding." The DOE form handles the HEA unemployment exemption as follows:

> If you document that you have been involuntarily separated from employment, [fill in name of guaranty agency] will not garnish your wages until you have been re-employed continuously for twelve (12) months. If you wish to claim this exemption from wage garnishment, you need to complete Part II of the enclosed "Request for Hearing" form and send us written proof that you qualify for the exemption by MM/DD/YYYY.[3] Satisfactory written proof is the following: documents from the [fill in name of state] Employment Commission (or similar state agency in another state) indicating your

---

(...continued)
§ 682.410(b)(9)(i)(G). *See* Federal Family Education Loan Program and William D. Ford Federal Direct Loan Program: Final Regulations, 65 Fed. Reg. 65616, 65621 (Nov. 1, 2000).

[3] The DOE offers no explicit guidance on what this deadline should be; however, in reading the DOE form as a whole, it is clear that the deadline in the unemployment-exemption paragraph is meant to comport with the HEA's general thirty-day deadline, which is referenced throughout the DOE form. *See* 20 U.S.C. § 1095a(a)(2).

entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated.

R. 51 at Ex. C (emphasis omitted). The DOE's accompanying "Request for Hearing" form, which debtors could use to respond to the garnishment notice, utilizes similar language in discussing the exemption.

These DOE forms were not simply optional suggestions; they were and are mandatory. *See* 34 C.F.R. § 682.401(d)(3).[4] On March 17, 1998, the policy chief of the DOE's Federal Family Education Loan Program issued the DOE-approved "Notice Prior to Wage Withholding" and "Request for Hearing" forms to guarantors, including ISAC, with a cover

---

[4] In February 2000, when DCS mailed its notice to Kort, § 682.401(d)(3) stated: "The guaranty agency shall use a common application form, promissory note, and other common forms approved by the Secretary." 34 C.F.R. § 682.401(d)(3) (1999). Effective July 1, 2000, the subparagraph was amended to state: "The guaranty agency must use common application forms, promissory notes, Master Promissory Notes (MPN), and other common forms approved by the Secretary." *See* Federal Family Education Loan Program and William D. Ford Federal Direct Loan Program: Final Regulations, 64 Fed. Reg. 58938, 58947, 58959-60 (Nov. 1, 1999). The amendment is of no consequence here, and the bottom line is that the garnishment forms issued by the DOE were compulsory.

letter stating: "*These new notices must be used for any wage garnishment initiated on or after June 1, 1998.*" R. 51 at Ex. C (emphasis in original).[5]

Consequently, ISAC and DCS used the government forms as directed. The notice and the response form that DCS sent to Kort followed the DOE forms verbatim, adding only Kort's name, address, amount owed, and other specifics. With respect to the unemployment exemption, the DCS notice tracked the DOE form as follows:

> If you document that you have been involuntarily separated from employment, Illinois Student Assistance Commission will not garnish your wages until you have been re-employed continuously for twelve (12) months. If you wish to claim this exemption from wage garnishment, you will need to complete Part II of the enclosed Request for Hearing form and send us written proof that you qualify for the exemption by March 6, 2000.[6] Satisfactory "written proof" is the following: documents from the applicable Employment Commission (or a similar state agency in another state) indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated.

---

[5] These forms were revised versions of prior forms issued by the DOE.

[6] The March 6 deadline was thirty days from the date DCS printed and dated its notice, February 5. *See supra* n.3.

R. 51. at Ex. A (emphasis omitted). The response form that DCS provided to Kort likewise followed the similar text about the exemption in the DOE's "Request for Hearing" form.

After receiving the DCS notice, Kort filed a two-count complaint in the Northern District of Illinois against DCS, claiming that the notice was false and misleading in violation of the FDCPA. Count one alleged that the DCS notice misstated the date by which Kort had to take action to avoid the garnishment. Count two alleged that the DCS notice contained misinformation about the HEA unemployment exemption. Specifically, Count two asserted: "The statute does not require the consumer to take any action, or act within any particular time frame, to qualify for the exemption." R. 1 at 5. Kort maintained that, because the text of the HEA contained no documentation or deadline requirement, DCS wrongfully required her to come forward with documentation of her eligibility for the exemption and to do so by a certain date.

Kort brought her action as a class action on behalf of herself and others who had received the DCS notice. After certifying a class of 460 individuals for count two and a subclass of 107 individuals for count one, the district court entertained cross-motions for summary judgment on each count.

The district court granted Kort and the corresponding subclass summary judgment on count one. The district court determined that, because the March 6 deadline in the notice was less than thirty days after DCS mailed the notice on February 7, the notice violated the FDCPA: the notice wrongfully stated that the garnishment could begin on a date that came before the HEA's thirty-day notice period had expired. *See Kort v. Diversified Collection Servs.*, 270 F. Supp. 2d 1017, 1022-25 (N.D. Ill. 2003). Thereafter, Kort, on

behalf of herself and the count-one subclass, accepted an offer of judgment from DCS. Kort received $1,000.00 and the other 106 subclass members each received $300.00. Kort also recovered her attorneys' fees and costs. Count one is not at issue on appeal.

Conversely, the district court granted DCS summary judgment on count two. The district court ruled that DCS was insulated from liability under the FDCPA's bona fide error defense. The district court concluded that, even if the notice violated the FDCPA by misleading Kort and the others about the HEA unemployment exemption, the violation was excusable given DCS's reliance on the DOE form. *See id.* at 1025-27. The district court did not render an alternative ruling on whether the notice actually violated the FDCPA in this regard.

In accepting DCS's offer of judgment, Kort extinguished her appeal rights. Nonetheless, the district court allowed count-two class members Hattie Harris-Alleyne and Lindsay Miller to intervene for the purpose of appealing the grant of summary judgment against the count-two class. On appeal, Harris-Alleyne and Miller request that we reverse the grant of summary judgment for DCS on count two and that we remand the case to the district court with instructions to enter summary judgment in favor of the count-two class.

## II.

We review a district court's decision involving cross-motions for summary judgment de novo. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Id.* (internal quotation omitted). "Summary judgment is proper if the record demonstrates that there is no genuine issue as to any ma-

terial fact and that a moving party is entitled to judgment as a matter of law." *Id.* (internal quotation and brackets omitted).

Under the FDCPA, a debt collector is subject to civil liability, *see* 15 U.S.C. § 1692k(a), if it "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or if it "use[s] unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. The statute, however, also affords debt collectors an affirmative defense, called the bona fide error defense. Under this defense, "[a] debt collector may not be held liable [under the FDCPA] if the debt collector shows by a preponderance of evidence that the *violation* was not intentional and resulted from a bona fide *error* notwithstanding the maintenance of procedures reasonably adapted to avoid any such *error*." 15 U.S.C. § 1692k(c) (emphasis added).

In spite of the fact that DCS used the precise language directed by the DOE, Harris-Alleyne and Miller claim that such language erroneously explained the HEA unemployment exemption thereby causing a violation of the FDCPA. The question before us is whether DCS, given its adherence to the DOE form, is entitled to the bona fide error defense. In addressing this question, we assume only for the sake of argument, as the district court did, that DCS (and thus the DOE) erred in explaining the HEA unemployment exemption in the garnishment notice. Given that assumption, we presume only for the sake of argument that DCS violated the FDCPA.[7] Here, we are dealing with the interplay between

---

[7] Hereinafter, we will use the phrases "assumed error" and "presumed violation" (or "presumed FDCPA violation") simply to address Harris-Alleyne and Miller's arguments within the framework of the bona fide error defense. To be clear, we are not
(continued...)

two federal statutes, and it is important to distinguish between the "assumed error" in this case and the closely-linked "presumed violation." Under Harris-Alleyne and Miller's theory of events, DCS erroneously explained the unemployment exemption under the HEA. This is the assumed error. The commission of this assumed error caused DCS, according to Harris-Alleyne and Miller's theory, to violate the FDCPA. This is the presumed violation. Thus, the root of the assumed error is the HEA, and the root of the presumed violation is the FDCPA.

To qualify for the bona fide error defense, DCS must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error (here, the assumed error regarding the HEA); and (3) it must show that it maintained procedures reasonably adapted to avoid any such error. *See Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997). We will consider each element in turn.

---

[7] (...continued)
endorsing Harris-Alleyne and Miller's ultimate claim that DCS erred in explaining the HEA and thus violated the FDCPA. Rather, in order to reach Harris-Alleyne and Miller's challenges to the bona fide error defense, we assume/presume that such an error and violation occurred. Nothing more. There is, moreover, no particular distinction between the terms "assumed" and "presumed" in this context; the differing adjectives are used merely as a means of reducing confusion by distinguishing the "error" and the "violation" from each other. This distinction will become important as we analyze the elements of the bona fide error defense. As discussed below, *even had* DCS erred and violated the FDCPA as claimed by Harris-Alleyne and Miller, DCS is entitled to the bona fide error defense and thus prevails.

First, DCS's presumed violation was not intentional. By carefully following the DOE form, DCS did not intentionally violate the FDCPA. That is, tracking the DOE form word for word[8] satisfactorily shows that DCS did not intend for its notice—including the portions covering the unemployment exemption—to be false or unfair. Indeed, DCS's adherence to the DOE form shows that DCS intended to provide accurate information taken from the relevant regulatory agency. In this respect, DCS's actions differ little from debt collectors who follow safe-harbor language drafted by this court. *See, e.g., Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 949 (7th Cir. 2004); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997). Additionally, the DOE form that DCS was using was compulsory, not optional, but more on this point below.

Furthermore, contrary to Harris-Alleyne and Miller's assertion, the fact that DCS deliberately used the form and intentionally sent a personalized version of the form to the class members does not negate the bona fide error defense. A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional. *See Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error

---

[8] The only genuine distinction in the unemployment-exemption paragraph between the DCS notice and the DOE form is that DCS filled in the DOE's "MM/DD/YYYY" with a deadline that was thirty days from the date DCS printed and dated its notice to each class member. As indicated in footnote three above, this thirty-day deadline is in accordance with the DOE form. Furthermore, the fact that some of DCS's garnishment notices misstated this thirty-day period by imposing premature deadline dates is a matter resolved in the disposition of count one.

defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense."). Therefore, DCS has satisfied the first element of § 1692k(c).

Second, if DCS violated the FDCPA, the presumed violation was the result of a bona fide error. Harris-Alleyne and Miller complain that the district court erred in treating the presumed violation and the assumed error as one and the same. However, they are not one and the same: as indicated above, the assumed error concerns the allegedly erroneous explanation of the HEA, while the presumed violation relates to Harris-Alleyne and Miller's accusation that DCS's assumed error caused DCS to violate the FDCPA. The presumed FDCPA violation was the inclusion of supposedly false and unfair language about the unemployment exemption in the garnishment notice. The assumed error, which led to the presumed violation, was DCS's supposed misunderstanding of what was and was not permissible under the HEA with respect to the unemployment exemption. In other words, the assumed error was DCS's assertion that the debtor must document the debtor's eligibility for the exemption and must do so by a defined date. Therefore, if DCS did indeed violate the FDCPA, the violation resulted from a separate and independent error.

More important, this assumed error was bona fide. That is, if made, it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake. *See* Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; gen-

uine"); *see also Edwards v. McCormick*, 136 F. Supp. 2d 795, 801 n.8 (S.D. Ohio 2001). If DCS did in fact erroneously apply the HEA in its garnishment notice as Harris-Alleyne and Miller allege, it did so because the DOE, the government agency invested with regulatory authority under the HEA, misinterpreted the HEA. DCS's wholesale adoption of the DOE's language regarding the unemployment exemption sufficiently shows that any error by DCS in this regard was a good faith, genuine, bona fide error.[9] Accordingly, DCS has satisfied § 1692k(c)'s second element.

Third, DCS employed a procedure reasonably adapted to avoid the assumed error. An entirely reasonable procedure to avoid misinterpreting and misapplying a federal statute, such as the HEA, is to adopt the legal interpretation of the federal agency charged with regulating under the statute in question. DCS's complete reliance on the DOE form demonstrates its reasonable effort to comply with the statute.

Harris-Alleyne and Miller argue in response that DCS failed to present proof that it actually relied on the DOE. DCS filed copies of its garnishment notice and the DOE

---

[9] Separately, before the district court, Kort argued that only factual or clerical errors, not legal errors, can serve as the basis for a bona fide error defense. *See Kort*, 270 F. Supp. 2d at 1026. As the district court indicated, courts are divided on whether the bona fide error defense applies to mistakes of law. *See Nielsen*, 307 F.3d at 640-41; *Johnson v. Riddle*, 305 F.3d 1107, 1121-22 n.14 (10th Cir. 2002); *Kort*, 270 F. Supp. 2d at 1026. Harris-Alleyne and Miller, however, have abandoned this argument on appeal. Nevertheless, for clarification purposes, without engaging in the mistake-of-law debate, we note that, because DCS followed the DOE form verbatim and did not exercise any "legal judgment" of its own, any mistake by DCS in this case was not mistake of law (i.e., any misinterpretation of the HEA in this situation was done by the DOE, not DCS). *Jenkins*, 124 F.3d at 832.

form with its summary judgment motion. The DCS notice and the DOE form are identical in all substantive respects—including the pertinent text concerning the unemployment exemption as demonstrated above. What further proof is necessary? Given the fact that the two forms were virtually identical and the fact that the DOE form was drafted first, there is no doubt that the text in the DCS notice did not originate with DCS—unquestionably, it was copied from the DOE form, which is sufficient to show that DCS relied on the DOE form in this case.

Additionally, Harris-Alleyne and Miller contend that DCS was simply following ISAC's instructions to use the DOE form. They then argue that blindly following its client's instructions nullifies the conclusion that DCS maintained procedures reasonably adapted to avoid the assumed error. While this argument may have merit in some situations involving private clients, it is misguided here. The argument ignores the fact that ISAC was merely the middleman. The source of the form, as well as the directive to use the form, was the DOE, which, again, is the federal agency charged with regulating under the HEA.

Furthermore, according to the DOE cover letter for the DOE form, the DOE form was compulsory. Quite naturally, therefore, ISAC told DCS to use to the DOE form, and DCS did so. Theoretically, DCS could have done more to ensure its notice complied with the HEA. Nevertheless, § 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . . , § 1692k(c) only requires collectors to adopt reasonable procedures."). Here again, adopting the DOE's legal interpretation of the HEA unemployment exemption was a

reasonable procedure to avoid an erroneous application of the exemption. Therefore, DCS has satisfied § 1692k(c)'s third element.

To summarize, *even if* DCS erred and violated the FDCPA as claimed by Harris-Alleyne and Miller, *see supra* n.7, DCS is entitled to the bona fide error defense as a matter of law. By showing that it adopted the DOE form completely, DCS has shown that: (1) it did not intentionally violate the FDCPA (i.e., DCS did not intentionally include false or unfair information about the HEA unemployment exemption in its garnishment notice); (2) any such presumed violation resulted from a bona fide error (i.e., if the notice contained false or unfair information about the exemption, it was the result of an erroneous application of the HEA derived from the DOE's interpretation of the HEA); and (3) it maintained procedures reasonably adapted to avoid any such assumed error (i.e., relying on the DOE's interpretation of the HEA is a reasonable procedure to avoid misapplying the HEA). Accordingly, the district court correctly granted DCS summary judgment on count two.

Before concluding, we further observe that the handling of the HEA unemployment exemption in the DOE form, and thus in the DCS notice, was entirely reasonable and proper. The HEA is silent on the questions of whether a debtor must come forward with documentation to substantiate the debtor's eligibility for the unemployment exemption and whether the debtor must do so within a certain time limit. However, Congress gave the DOE the authority to fill in gaps in the HEA. *See* 20 U.S.C. § 1082(a)(1). The DOE's language on the unemployment exemption encourages a speedy and amicable resolution of the dispute, a resolution that may help the debtor avoid the embarrassment of the debt collector contacting the debtor's employer. Moreover, it is an entirely efficient and common-sense approach to

require the debtor, who is in a better position to know if the debtor is eligible for the unemployment exemption, to share that knowledge with the guarantor and its agent and substantiate the debtor's eligibility with documentation. Therefore, given the DOE's persuasive and sound application of the HEA and its specialized experience in such student loan matters, we would defer to the DOE form in the context of this case. *See United States v. Mead Corp.*, 533 U.S. 218, 221, 234-35 (2001) (informal guidance from agencies, such as ruling letters or interpretive forms are afforded deference according to its persuasiveness); *Am. Fed'n of Gov't Employees, Local 2119 v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001).

## III.

DCS's adherence to the DOE form in its garnishment notice entitles it to the bona fide error defense, and DCS is thus insulated from FDCPA liability with respect to its handling of the HEA unemployment exemption.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*