[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15435
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-01935-CV-T-26-MSS

AHMET HEPSEN,

Plaintiff-Appellee,

versus

RESURGENT CAPITAL SERVICES, LP, et al.,

Defendants,

J.C. CHRISTENSEN AND ASSOCIATES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 17, 2010)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After a bench trial, Defendant-Appellant J.C. Christensen & Associates, Inc. ("JCC") appeals the district court's denial of summary judgment and separate entry of a $500 judgment in favor of Plaintiff Ahmet Hepsen on his claims under the Fair Debt Collection Practices Act (the "FDCPA"). After review, we affirm.

## I. BACKGROUND

This case involves a debt that appears to have begun life as a credit card debt and was subsequently acquired at least twice by follow-on creditors. The last creditor assigned the debt to a debt collection agency. That debt collection agency sent the debt to Defendant JCC, also a debt collection agency, which demanded payment from Hepsen. Hepsen claims JCC violated the FDCPA by naming the wrong creditor and wrong debt amount.

## A.    JCC's Collection Activities

On October 26, 2006, Defendant JCC received an account to collect from its client Resurgent Capital Services ("Resurgent"). Resurgent initially sent a first collection amount of $2,024.17, representing the purported principal balance. Later the same day, Resurgent sent an adjustment in the amount of $664.01, denoted an "interest adjustment," for a total debt of $2,679.18. JCC's tracking records for the debt show that JCC's "client" was Resurgent and the debt was sent

"Regarding: PROVIDIAN NATIONAL B."

Defendant JCC acts as a debt-collection conduit for its clients. JCC's policy is to send a demand letter to the debtor listing JCC's client as the "creditor." JCC maintains policies and procedures for reporting debt disputes to its clients and instructing employees on how to handle dispute and verification requirements of the FDCPA, including a two-week training program for new employees. JCC maintains an electronic record of collection activity and uses daily and monthly monitoring to evaluate compliance with the FDCPA. JCC uses a system called Artiva to verify totals and agreement of electronic information provided by its clients.

Defendant JCC however does not independently verify the existence or amount of debt received from its clients. JCC's compliance director testified that JCC has no way of knowing whether the initial information it receives from its clients is correct. JCC's prior dealings with Resurgent indicated that money collected on Resurgent's behalf was, in fact, owed to another entity called LVNV Funding LLC.

On October 27, 2006, Defendant JCC mailed a demand letter to Hepsen. The letter lists "RESURGENT CAPITAL SERVICES" as the "CREDITOR(S)" and states the full amount owed is "$2,679.18." The JCC letter offers Hepsen the

option of paying off the debt in full as a lump sum of $1,071.67. The JCC letter also contains this notification about the validity of the debt:

> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you so notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

On November 16, 2006, Hepsen wrote a letter to JCC stating that he "never had an account with Resurgent Capital Services" and never dealt with JCC, and requesting documents verifying his responsibility for the debt and a copy of the request or other document showing that JCC received a referral for the debt from another firm. Hepsen did not specifically dispute the amount of debt owed or request the name of the original creditor.

Defendant JCC received Hepsen's dispute letter on November 21, 2006. JCC recorded Hepsen's account as "disputed" in its internal log and ceased all collection activity on Hepsen's account. On November 30, 2006, JCC forwarded Hepsen's dispute letter to Resurgent for validation of the debt. JCC never again contacted Hepsen. JCC did not receive a response or debt validation from

4

Resurgent.  On December 8, 2006, Defendant JCC closed Hepsen's account and returned the debt to Resurgent.

On December 21, 2006, Resurgent sent a demand letter to Hepsen purporting to validate the debt and demanding that Hepsen pay a total debt of $1,955.30, reflecting a principal balance of $1,369.16 and accrued interest.  The letter lists the "CURRENT CREDITOR" as LVNV Funding LLC and the "PREVIOUS CREDITOR" as OSI/Gulf State Credit and identifies Resurgent as a "professional debt collector."  It also states: "The account of AHMET HEPSEN acquired from OSI/Gulf State Credit is now owned by LVNV Funding LLC."

**B.    Hepsen's Lawsuit**

On October 25, 2007, Hepsen filed this action against Defendant JCC.[1] Hepsen's two-count complaint alleges violations of the FDCPA through JCC's false representation of the amount of the debt owed, 15 U.S.C. § 1692e(2)(A), and of the creditor of the debt, 15 U.S.C. § 1692e(10), and violations of the Florida Consumer Collection Practices Act ("FCCPA").  Fla. Stat. § 559.72(9).

Both parties moved for summary judgment.  JCC sought summary judgment based on, inter alia, the "bona fide error" defense.  Hepsen moved for summary

---

[1]Originally, Hepsen also sued Resurgent, LVNV Funding LLC, and an individual. Hepsen subsequently dismissed Resurgent and LVNV and receded from his claims against the individual, leaving JCC the sole defendant.

5

judgment on his FDCPA claims and argued that the "bona fide error" defense did not apply to JCC.[2]

The district court denied both summary judgment motions. The district court determined that factual disputes existed over whether JCC demanded the correct amount of debt or maintained adequate procedures designed to avoid FDCPA violations. The district court also found a fact issue over whether JCC intentionally mis-named Hepsen's creditor.

## C. Bench Trial

The parties proceeded to a bench trial, at which Hepsen and two JCC employees testified. After issuing findings of fact, the magistrate judge concluded: (1) that JCC's demand letter incorrectly stated the amount owed by Hepsen and mis-identified the name of Hepsen's creditor; and (2) that JCC was not entitled to the bona fide error defense because it was unable to show it "maintained procedures reasonably adapted to avoid misstating the amount of debt in its demand letter to Plaintiff." The district court imposed $250.00 in damages for

---

[2]Hepsen also moved to amend his complaint to add a claim under a different subsection of the state-law FCCPA. The district court denied this amendment. Hepsen subsequently filed notice that he was receding from that additional FCCPA claim. In its summary judgment order, the district court noted that Hepsen effectively was pursuing only his FDCPA claims, and the action proceeded on those FDCPA claims alone. Hepsen does not challenge those rulings or argue that state-law claims remain in the case, and thus we address only his federal FDCPA claims.

each violation of the FDCPA, for a total of $500.00.[3]

Defendant JCC filed this timely appeal.[4]

## II. DISCUSSION

### A. Summary Judgment Errors

Defendant JCC argues the district court erred in finding genuine issues of material fact as to whether the account balance in JCC's demand letter to Hepsen was inaccurate and in concluding that JCC was not entitled to the FDCPA's "bona fide error" defense. Upon de novo review, we affirm.[5]

"The [FDCPA, 15 U.S.C. §§ 1692 et seq.] provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act . . . ." Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352 (11th Cir. 2009). The FDCPA generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and the use of "unfair or unconscionable means to

---

[3]The FDCPA provides that an individual plaintiff can receive actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees. Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352 (11th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(1)-(3)).

[4]Hepsen does not appeal the district court's denial of his summary judgment motion.

[5]We review a district court's denial of summary judgment de novo, taking all evidence in the light most favorable to the non-movant. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008).

collect or attempt to collect any debt." Id. § 1692f. "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010)).

JCC first asserts the district court erred in finding genuine issues of material fact over whether its demand letter to Hepsen stated an inaccurate debt balance, in violation of §§ 1692e(2)(A) and 1692e(10). Section 1692e(2)(A) prohibits "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692(e)(2)(A). Section 1692e(10) similarly prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Id. § 1692e(10). We analyze the FDCPA by beginning with the language of the statute itself. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). We use a "least-sophisticated consumer" standard to consider whether a debt collector's communication violates § 1692e, presuming that the "least-sophisticated consumer" possesses a rudimentary amount of information about the world and a willingness to read a collection notice with some care. LeBlanc, 601 F.3d at 1194.

At the summary judgment stage, the evidence before the district court was

8

that JCC demanded its initial amount of $2,679.18 without verifying the existence or amount of the debt, that JCC was unable to verify the debt after Hepsen disputed it, and that when Resurgent later responded to Hepsen's dispute, it demanded $1,955.30, an amount different from JCC's initial demand. The record before the district court on summary judgment did not indisputably establish the correct debt actually owed by Hepsen, even if that number can be ascertained. Rather, the district court was presented with differing factual accounts of Hepsen's debt. The district court thus did not err in denying JCC's summary judgment motion because JCC had not shown undisputed evidence that its demand letter stated the accurate debt amount.

Defendant JCC also argues the district court's ruling was erroneous because the FDCPA does not require a debt collector to verify debts from its clients before sending a demand to a debtor. JCC is correct in part. Under § 1692g(b), if a consumer notifies the debt collector in writing of a dispute within 30 days of receiving the demand notice, "the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . , or the name and address of the original creditor, and a copy of such verification . . . , or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Thus a debt collector is not required to take some other

affirmative step if the consumer disputes the debt. Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1014 (11th Cir. 2004). The plain language of § 1692g(b) requires only that a debt collector cease collection of the debt if it is disputed, unless the debt collector verifies the debt or the name and address of the original creditor and mails that information to the debtor. JCC did this. But § 1692g(b) does not modify the previous section of the FDCPA, § 1692e, prohibiting a debt collector from attempting to collect an inaccurate debt, so JCC still could be liable for sending the demand letter to Hepsen even if the FDCPA does not explicitly require that JCC verify the debt before sending a demand.

However, the FDCPA provides defendants with a "bona fide error" defense, insulating debt collectors from liability even when they have failed to comply with the Act's strict requirements. Edwards, 584 F.3d at 1352. The bona fide error defense provides: "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

A defendant asserting the bona fide error defense must show its violation of the FDCPA: (1) was unintentional; (2) was a "bona fide" error; and (3) occurred despite the existence of procedures reasonably adapted to avoid violations of the

10

FDCPA. Edwards, 584 F.3d at 1353. A panel of this Court previously defined "bona fide error" as an error "'made in good faith[, from] a genuine mistake, as opposed to a contrived mistake.'" Id. at 1353 (quoting Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 538 (7th Cir. 2005)). "To be considered a bona fide error, the debt collector's mistake must be objectively reasonable." Id.

JCC argues it satisfied the requirements of the bona fide error defense. We agree with the district court that genuine disputes of material fact existed over whether JCC satisfied the defense. Even if JCC satisfied the first two elements of the bona fide error defense (that its violation was unintentional and resulted from a "bona fide" error), JCC also had to show undisputed evidence that it maintained procedures reasonably adapted to avoid violations of the FDCPA. Edwards, 584 F.3d at 1353. JCC maintained procedures to check numerical errors of the debts it received from its clients, but JCC had no procedures in place to verify that debts were, in fact, accurate. JCC did not contact Resurgent to verify that the debt existed before sending its demand letter to Hepsen. The district court correctly found at the summary judgment stage that JCC had not shown undisputed evidence that its procedures were reasonably adapted to avoid violating the FDCPA.

## B. Trial Errors

Defendant JCC next argues that the district court erred in entering judgment

11

against JCC, for two reasons: (1) the district court's fact finding that the debt balance in JCC's demand letter to Hepsen was inaccurate is not supported by the trial evidence; and (2) the district court wrongly concluded that JCC was not entitled to the bona fide error defense.[6]

We reject JCC's argument that Hepsen failed to present evidence that the account balance in JCC's demand letter was inaccurate. At trial, Hepsen testified, as did JCC's compliance manager and one of Resurgent's legal analysts. The trial testimony was consistent with the evidence presented at the summary judgment stage. Resurgent's legal analyst testified that Resurgent sometimes demands less than the full amount of debt owed, that its demand of $1,955.30 from Hepsen reflected a decision to demand less than the full interest owed on the debt, and that $1,369.16 was the principal originally acquired by LVNV from OSI/Gulf State Credit. JCC was aware of Resurgent's practice of demanding less than the full amount of interest.

The evidence at trial showed that the amount demanded by JCC was reflected in Resurgent's referral balance of a principal of $2,024.17 and $655.01 in

_____

[6]We review a district court's judgment from a bench trial applying de novo review to the district court's conclusions of law and clear error review to the district court's findings of fact. HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005). "[W]e may reverse the district court's findings of fact if, after viewing all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)).

interest, for a total debt of $2,679.18. However, at the time LVNV acquired Hepsen's debt from OSI/Gulf State Credit, the original principal balance was $1,369.16. Resurgent later demanded $1,955.30 from Hepsen, reflecting the original principal balance plus a discounted amount of accrued interest. This difference between the amount demanded by JCC and the amount later demanded by Resurgent, on behalf of the creditor LVNV, supports a reasonable inference that JCC's demand was inaccurate. Thus, the district court's finding of fact that JCC incorrectly stated the debt in its demand letter is supported by sufficient evidence.

We also find no error in the district court's legal conclusion that JCC's demand letter violated the FDCPA. The facts, as found by the district court, show the actual amount of debt held by Resurgent at the time of its transfer to JCC was a total of $1,369.16 plus accrued interest, not the $2,024.17 plus interest demanded by JCC. That finding is supported by the evidence presented at trial and is not clearly erroneous. The district court's conclusion that JCC violated the FDCPA through this inaccurate demand, even if unintentionally, is not in error.

The essence of JCC's argument on appeal is that it should be entitled to the bona fide error defense as to both the amount of debt and the identity of the creditor. The district court concluded that JCC's errors were not "bona fide" because its practice of naming its client as the "creditor," even when it had

information suggesting the debt may be owed to other entities, was not reasonable. The district court also concluded that JCC did not show it maintained adequate procedural safeguards designed to prevent inaccuracies.

JCC has not shown reversible error in the district court's conclusion that JCC did not satisfy the requirements of the bona fide error defense. JCC's misstatements to Hepsen appear to have been unintentional, entitling JCC to the bona fide error defense if its mistakes were objectively reasonable and occurred despite the existence of adequate procedures to avoid mistakes. As did the district court, we conclude JCC's practice of naming its client as the "creditor" was not an objectively reasonable mistake. JCC knew from its prior dealings with Resurgent that money demanded by Resurgent actually was owed to LVNV Funding LLC, and JCC was aware that Hepsen's debt to Resurgent was related to an account with Providian National Bank. JCC's practice of identifying Resurgent as the "creditor" did not apprize Hepsen of other information about his debt of which JCC was aware.

JCC also did not maintain adequate procedures reasonably adapted to avoid violations of the FDCPA. JCC's policy was to take information directly from its clients, error-check that information using a computer program designed to catch mathematical irregularities (but not unverified debts), and forward that information

14

to debtors for collection. JCC did not establish that its policies guard against collection of inaccurate debts, because it had no policy in place to verify the existence or amount of debts before sending demand notices. JCC correctly notes that the FDCPA does not impose an <u>affirmative</u> obligation on debt collectors to independently verify debts, but that lack of affirmative obligation does not also protect a debt collector who attempts to collect an inaccurate debt. JCC has not shown its procedures were reasonably adapted to avoid violating the FDCPA and thus has not satisfied the requirements for the bona fide error defense.

## C.    Rule 50 Error

JCC's final argument is that the district court erred in denying JCC's Rule 50 motion for a directed verdict because Hepsen did not establish his debt was a "consumer debt" entitled to the protections of the FDCPA. <u>See</u> Fed. R. Civ. P. 50. As the Court has explained and as Rule 50 clearly states, a Rule 50 motion applies only in civil cases tried to a jury. <u>Falanga v. State Bar of Ga.</u>, 150 F.3d 1333, 1338 n.12 (11th Cir. 1998); Fed. R. Civ. P. 50(a)(1).[7] Thus, Rule 50 does not apply here.

---

[7]In any event, JCC's Rule 50 motion had no merit. The FDCPA applies solely to debts arising from "consumer transactions," <u>Hawthorne</u>, 140 F.3d at 1371, which the FDCPA defines as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The district court determined that Hepsen had shown his debt was a "consumer" debt because it was related to a Providian National Bank credit card in his name, connected to his home address, and not used for business. JCC did not rebut this evidence.

15

**AFFIRMED.**