Dorothy L. **ISHAM**, Plaintiff,

v.

**GURSTEL, STALOCH & CHARGO, P.A.,** Defendant.

No. CV 09–0758–PHX–DKD.

United States District Court, D. Arizona.

July 7, 2010.

988

Floyd W. Bybee, Bybee Law Center PLC, Gilbert, AZ, for Plaintiff.

Bridget A. Sullivan, Gurstel Staloch & Chargo PA, Golden Valley, MN, Jennifer Ellen Wiedle, Michael Richard Sneberger, Gurstel Staloch & Chargo PA, Tempe, AZ, for Defendant.

## ORDER

DAVID K. DUNCAN, United States Magistrate Judge.

Currently pending before the Court are motions for summary judgment. Plaintiff Dorothy L. Isham ("Isham") filed a motion for partial summary judgment (Doc. # 44), and Defendant Gurstel, Staloch & Chargo, P.A. ("Gurstel") filed a response and cross-motion for summary judgment (Doc. # 46). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) (Doc. # 4, 8 and 9). For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part Plaintiff's motion for partial summary judgment. Furthermore, the Court **DENIES** Defendant's cross-motion for summary judgment.

## BACKGROUND

Prior to 2006, Isham opened and used a Bank of America[1] ("BOA") credit card for personal, family and household purposes. (Doc. # 45, PSOF ¶ 2 (Exhibit A at ¶ 3)). Isham paid off the balance of this card in Fall 2006, and affirms she did not use it thereafter. (Doc. # 45, PSOF ¶ 3, 4 (Exhibit A at ¶ 4 & 5)). In or about December 2006, some unidentified person used Isham's BOA credit account to make $15,000.00 worth of purchases. (Doc. # 45, PSOF ¶ 5 (Exhibit A at ¶ 6)). Upon receipt of a billing statement concerning these unauthorized charges, she notified BOA of the alleged fraud. (Doc. # 45, PSOF ¶ 6 (Exhibit A at ¶ 7)). She also filed a report with the Phoenix Police Department. (Doc. # 45, PSOF ¶ 7 (Exhibit A at ¶ 8)).

Isham allegedly wrote and called BOA several times to notify it of the dispute, gave BOA the police report number for her case, and requested that BOA provide the Phoenix Police Department with copies of all records associated with the disputed charges. (Doc. 1, Complaint ¶ 21; Doc. # 48, Affidavit of Bridget Sullivan (Exhibit C, Dorothy Isham's Deposition Transcript, pg. 7, lns. 20–25, & pg. 8, lns. 1–20)). BOA failed to provide this documentation, and attempted to collect the debt by assigning Isham's account to third-party collection agencies. (*Id.* at pg. 9, lns. 24–25, & pg. 10, lns. 1–6; Doc. # 45, PSOF ¶ 8 (Exhibit A at ¶ 9)).

In early 2008, BOA transferred Isham's account to National Enterprise Systems, Inc. ("NEI"). (Doc. # 45, PSOF ¶ 8 (Exhibit A at ¶ 9)). On March 11, 2008, Isham hired an attorney, Floyd Bybee, to represent her. (Doc. # 45, PSOF ¶ 9 (Exhibit A at ¶ 10; Exhibit F (Affidavit of Dwayne Richard Hayes) at ¶¶ 9 and 10)). While the NEI suit was pending, another third-party collector, Gurstel, was retained to collect upon the same Bank of America debt. (Doc. # 45, PSOF ¶ 12 (Exhibit A at ¶ 13; Exhibit B)).

Gurstel sent Isham a preliminary collection statement on November 4, 2008, which notified her of the alleged BOA debt and gave the proper verification/validation notices required by 15 U.S.C. § 1692g(a). (Doc. # 45, PSOF ¶ 19 (Exhibit A at ¶ 16, 17, and 18; Exhibit C)). According to Isham, her daughter and son-in-law sent Gurstel a First Class letter dated 11/16/08 on Isham's behalf. (*Id.* at ¶ 20 (Exhibit A at ¶ 18; Exhibit E (Affidavit of Cynthia Hayes) at ¶ 5; Exhibit F at ¶ 5)). Isham affirms that she drafted the content of the letter, including dispute of the debt, refusal to pay, a request that Gurstel cease communication with her, and notice that she was represented by an attorney on this matter. (Doc. # 45, PSOF ¶ 19 (Exhibit A at ¶ 16, 17, and 18; Exhibit C); PSOF ¶ 20 (Exhibit A at ¶ 18; Exhibit E (Affidavit of Cynthia Hayes) at ¶ 5; Exhibit F at ¶ 5)).

---

1. Bank of America is also referred to as "FIA Card Services, N.A."

After mailing the letter, Isham received two more calls from Gurstel (11/21/08 and 11/25/08). (Doc. # 45, PSOF ¶ 21 (Exhibit A at ¶ 19)). In response, Isham sent a second letter to Gurstel on 12/6/08, along with a copy of her 11/16/08 letter. (Doc. # 45, PSOF ¶ 22 (Exhibit A at ¶ 20; Exhibit D; Exhibit E at ¶ 6; Exhibit F at ¶ 6)). This particular letter reemphasized that Gurstel cease communications, stating "Kindly don't bother me anymore." (Doc. # 45, PSOF ¶ 23 (Exhibit D)). The 12/6/08 letter was sent via Certified Mail, Return Receipt Requested. (Doc. # 45, PSOF ¶ 25 (Exhibit A at ¶ 22; Exhibit E at ¶ 8; Exhibit F at ¶ 8; Exhibit G)). An employee of Gurstel did in fact sign the Return Receipt, and a copy of the receipt was returned to Isham. (Doc. # 45, PSOF ¶ 26 (Exhibit G; Exhibit H (Deposition of Schelley Ann Hagerman) at pg. 51 lns. 21—pg. 52 ln. 5, pg. 88 ln. 20—pg. 89 ln. 2)). However, Gurstel denies receiving either letter, and thus did not know that Isham had requested a cease, disputed the debt, or had retained an attorney.

Gurstel admits that Isham told the collector to call her attorney during the 11/21/08 call. (Doc. # 56, Affidavit of Brian J. Kingsley, ¶ 24). However, the collector did not put the "XATTY" code (adversary attorney code) into Isham's electronic file after this call. Id. at ¶ 26–28. Based on Kingsley's experience, it is not uncommon for consumers to falsely state that they have an attorney and hang up. Id. During the 11/25/08 call, Isham said she was represented by an attorney, but did not have any information about him at the time. Id. at ¶ 30. After this call, the collection agent entered the unknown adverse attorney code, "XATTY." (Doc. # 48–1, Exhibit A, pg. 3). Also, Gurstel allegedly sent Isham a consumer representation letter via First Class mail to obtain her attorney's contact information. Id. Gurstel produced a copy of their standard form letter regarding attorney representa-

tion during discovery, but there is no copy of the specific letter that was purportedly sent to Isham on 11/30/08. (Doc. # 56, Affidavit of Brian J. Kingsley, ¶ 32–33). According to Gurstel's paperless notes, Isham never replied to Gurstel's request for attorney information. (Doc. # 48–1, Exhibit A, pg. 4).

In April 2009, Gurstel determined that a reasonable amount of time had passed with no response and that it could once again contact Isham directly. (Doc. # 56, Affidavit of Brian J. Kingsley, ¶ 34). Kingsley thus removed the unknown attorney code from Isham's account. Id. at ¶ 35. On April 6, 2009, Gurstel called Isham again. (Doc. # 45, PSOF ¶ 28 (Exhibit A at ¶ 25)). According to Isham, she told the collector that her attorney took care of this debt, and to contact him directly. (Doc. # 1, Complaint ¶ 32). Isham alleges that the collector stated, "Oh no you have not. You owe $23,000 and this is not going to go away." Id.

On April 8, 2009, Gurstel called Isham once more, saying, ". . . these calls are not going to stop. Pretty soon they are going to have someone knocking on your door to serve you papers. Don't you want to resolve this voluntarily?" (Id. at ¶ 35; Doc. # 45, PSOF ¶ 31 (Exhibit A at ¶ 28)). When Isham reminded Gurstel that she had a lawyer and the debt was fraudulent, the collector allegedly stated, "They keep passing it along as though it's yours." (Doc. # 45, PSOF ¶ 32 (Exhibit A at ¶ 29)). Isham claims to have recorded most of this call, but no exhibit containing this recording has been filed thus far. (Doc. # 45, PSOF ¶ 30 (Exhibit A at ¶ 27)).

Isham filed this action pursuant to 15 U.S.C. § 1692, alleging several violations of the Fair Debt Collections Practices Act ("FDCPA"). (Doc. # 1). She then filed a Motion for Partial Summary Judgment claiming that Gurstel violated §§ 1692c

(Communication in connection with debt collection), 1692c(a)(2) (Contacting a consumer represented by a lawyer), 1692c(c) (Failing to cease contact), 1692e(10) (False and misleading statements), and 1692g(b) (Continuing to collect a disputed debt without first providing verification of the debt) of the FDCPA. (Doc. # 44, pg. 1, lns. 18–20).

In her motion, Isham argues that because Gurstel continued to communicate directly with her after receiving oral and written notice of attorney representation and written dispute of the debt, refusal to pay, and a request to cease all communications with her, partial summary judgment should be entered in favor of Plaintiff on the issue of FDCPA liability. Isham also argues that she is entitled to summary judgment for her § 1692e(10) claim, alleging that Gurstel made false, misleading representations to collect the BOA debt. She contends that during the 04/08/09 call, Gurstel said the firm was retained by NCO (another third-party debt collector), yet the collection notices state that Gurstel represents FIA Card Services, N.A. (Doc. # 45, PSOF ¶ 33 (Exhibit A at ¶ 30; Exhibit B; Exhibit I (Plaintiff's First Set of Discovery Requests to Defendant Gurstel, Staloch & Chargo, P.A. and Defendant's Answers Thereto) Req. for Admission # 8)).

Gurstel filed a Response and a Cross–Motion for Summary Judgment arguing that many of the alleged FDCPA violations stemmed from a clerical, human error—mishandling of consumer mail. (Doc. # 46). Even if it did commit a minor violation of the FDCPA, Gurstel invokes the bona fide error defense pursuant to 15 U.S.C. § 1692k(c). Gurstel argues that while one of its employees may have misplaced a letter from Isham in which she claimed to be represented by counsel, Gurstel's extensive FDCPA compliance practices and procedures prevented further contact with Isham for many months until it obtained actual knowledge of representation. Gurstel claims Isham did not officially retain counsel on this matter until April 16, 2009. Isham disputes this fact. Gurstel argues that the presumed § 1692c(a)(2) violation of the FDCPA was not intentional, that it resulted from a bona fide error, and that Gurstel maintained specific and general procedures reasonably adapted to avoid the presumed mail-loss error. Gurstel alleges that it was not aware of the lost letter until commencement of this lawsuit, and upon awareness, it immediately restricted Isham's file and added her attorney's name to its records.

## SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the movant must show that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law ..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is "genuine," meaning "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir.1995); *see Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996).

## DISCUSSION

The parties agree that Isham is a "consumer" as defined by 15 U.S.C. § 1692a(3) and that Gurstel is a "debt collector" as

defined by 15 U.S.C. § 1692a(6). 15 U.S.C.A. § 1692a (West 2010); (Doc. # 5, ¶ 14). Thus, the FDCPA is applicable here. The first issue before the court is whether the Plaintiff has provided sufficient evidence to prove that Gurstel committed at least one violation of the FDCPA while attempting to collect upon the alleged debt. If the court finds that a violation did occur, it must determine whether Gurstel has proven that FDCPA liability is excused pursuant to the bona fide error defense provided by 15 U.S.C. § 1692k(c).

## I. FDCPA Liability

First, the Court will address Gurstel's alleged violations of the FDCPA and determine whether any issue of material fact exists to defeat partial summary judgment for liability. The FDCPA is a strict liability statute—it makes debt collectors liable for violations that are not knowing or intentional. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1004–05 (9th Cir.2008); *see Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1176 & n. 11 (9th Cir.2006). Under the strict liability framework, proof of a *single* FDCPA violation is sufficient to support summary judgment for the plaintiff (emphasis added). *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn. 1990). Here, the specific FDCPA provisions at issue for liability purposes are § 1692c(a)(2), § 1692c(c), § 1692e(10) and § 1692g(b).

### A. Gurstel's alleged violations of the FDCPA pursuant to 15 U.S.C. § 1692c(a)(2): Unlawful communication with a consumer who is represented by an attorney

Plaintiff Isham first requests summary judgment with respect to Gurstel's alleged FDCPA violation of 15 U.S.C. § 1692c(a)(2). Section 1692c(a)(2) states: (a) ... [A] debt collector may not communicate with a consumer in connection with the collection of any debt ... (2) if

[it] knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C.A. § 1692c(a)(2) (West 2010).

Here, there is no dispute that Gurstel directly communicated with the consumer via telephone after Isham allegedly sent the 11/16/08 "cease and desist" letter containing her attorney's information. Gurstel stipulates that it called Isham at her home on both 11/21/08 and 11/25/08 in pursuit of the alleged BOA debt. However, Gurstel denies having actual knowledge that Isham was represented by an attorney until this lawsuit commenced on April 16, 2009. Under § 1692c(a)(2) of the FDCPA, the "knowledge" requirement means that a debt collector must possess "actual knowledge" that the debtor was represented by an attorney. *See Burger v. Risk Mgmt. Alternatives, Inc.*, 94 F.Supp.2d 291, 293 (N.D.N.Y.2000). Gurstel argues that because it did not receive Isham's 11/16/08 letter, it was not put on actual notice in order to prevent further direct contact with the Plaintiff.

However, Brian Kingsley's Affidavit and the paperless notes on Isham's file show that Isham also *verbally* informed Gurstel that she had an attorney during the 11/21/08 phone call. Gurstel stipulates that the collection agent did not code the call with the adversarial attorney code, "XATTY" at that time, but argues that this decision was based on the agent's insignificant and incomplete exchange of information with Isham. Gurstel further admits, however, that Isham once again verbally notified the collector of her attor-

ney representation during the 11/25/08 call. The paperless notes for this call indicate that Gurstel did attach the "XATTY" code to Isham's account at this point. The notes also state that a standard consumer representation letter was sent to Isham's home. The representation letter requested that the form be returned within ten days. However, because Gurstel did not send this representation letter via certified mail, the Defendant cannot prove that Isham ever received its request.

Assuming Isham received Gurstel's representation letter, Isham's 12/06/08 correspondence was a timely response to Gurstel's request. The 12/06/08 letter specifically referenced Isham's 11/16/08 letter, and contained a copy of the 11/16/08 letter. Although Gurstel denies ever receiving these mailings, Doc. # 45, Exhibit D shows a copy of the Certified Mail Return Receipt for Isham's 12/06/08 letter. Gurstel stipulates that one of its paralegals did in fact sign the receipt on 12/08/08. (Doc. # 70, PCSOF ¶ 153 (Exhibit N, Request for Admission No. 3; Exhibit L, pg. 88–89)). As a matter of law, this signed receipt implies that Gurstel had *actual* notice that it received the letter. It is immaterial whether the paralegal assigned to Isham's account was put on actual notice due to alleged mishandling of office mail. It was reasonable for Isham to infer that Gurstel received the letter because the certified mail return receipt was sent back to her a few days later.

Based on the evidence provided thus far, the Court finds that there is an issue of material fact as to whether Gurstel's 11/21/08 and 11/25/08 calls were violative of 15 U.S.C. § 1692c(a)(2). Because Isham sent her 11/16/08 letter via First Class mail and has no independent evidence that it was actually sent, summary judgment is precluded as to the 11/21/08 and 11/25/08 calls. If Isham's 11/16/08 letter got lost in

transit, Gurstel would not have received written notice of attorney representation before it made the November 2008 calls. Furthermore, there is a material dispute as to whether Isham verbally affirmed that she had an attorney on the 11/21/08 call. Even if Gurstel made an error by failing to mark her account with the "XATTY" code at that time, this code was inputted to her account after Gurstel's 11/25/08 call. Isham admits that Gurstel did not make further contact with her from November 25, 2008 to April 6, 2009, and thus reasonably assumed that the firm was on notice of her attorney representation.

■ In contrast, the Court finds that Gurstel's April 2009 calls did violate 15 U.S.C. § 1692c(a)(2) as a matter of law. There is no question of material fact as to whether Gurstel was on actual notice that Isham had an attorney by this time. Not only did Gurstel sign the certified mail return receipt for Isham's 12/06/08 letter, but Brian Kingsley's affidavit confirms that a collection agent put the "XATTY" code on Isham's account after the 11/25/08 call. Thus, even if Gurstel did not receive Isham's 12/06/08 letter, it still had actual notice that Isham claimed attorney representation. It is true that § 1692c(a)(2) provides that communication with the debtor may recommence if the alleged attorney "fails to respond within a reasonable period of time" to a written request for the attorney's information. 15 U.S.C. § 1692c(a)(2). However, but for Gurstel's mishandling of Isham's 12/06/08 letter, the firm would have received a timely written response from Isham that contained her attorney's contact information.

Therefore, Plaintiff's motion for partial summary judgment will be granted on her § 1692c(a)(2) claim. Based on the 11/25/08 phone call and signed return receipt for Isham's 12/06/08 letter, there is no dispute as to whether Gurstel had actual notice

that Isham was represented by an attorney. Because Gurstel continued to directly contact Isham in April 2009, the Court finds that Defendant violated 15 U.S.C. § 1692c(a)(2) as a matter of law.

In making this finding, the Court did consider Gurstel's argument that Isham cannot prove she actually retained Floyd Bybee to represent her in the lawsuit at hand during the relevant time in question. Gurstel does not dispute that Isham retained Bybee for her lawsuit against NEI. However, Gurstel points out that an official contingency agreement for the present case was not signed by Isham until April 16, 2009. (Doc. # 47, pg. 13; Doc. # 59, Bybee Fee Agreement, 4/16/09). Also, Gurstel highlights that no billable time was recorded by Bybee for Isham's first case after November 5, 2008. (Doc. # 59, Billable Time Records for Plaintiff). While Bybee admits that there are no time entries between 11/06/08 and 12/31/08, Bybee's 11/18/09 letter to Gurstel reveals that the NEI suit settled shortly after the 11/05/08 entry. (Doc. # 48, Exhibit G). Yet Bybee affirms that Isham's NEI lawsuit did not actually settle until January 2009. (Doc. # 70, ¶ 120).

Because the first lawsuit concerned the same alleged debt at issue in the present case, it was reasonable for Isham to assume Bybee would represent her in the Gurstel matter, with or without the presence of a specific retainer fee. Both agreements were on a contingency fee basis, so Isham did not owe Bybee anything until a lawsuit was actually filed. (Doc. # 59, Bybee Fee Agreements). The affidavit sworn by Isham's son-in-law reaffirms Isham's good faith belief that she hired Bybee to not only represent her in the first lawsuit, but also in any related matters. (Doc. # 45, Affidavit of Dwayne

Richard Hayes). Thus, the Court grants Plaintiff's motion for partial summary judgment on this issue, and denies Defendant's motion for summary judgment with respect to this FDCPA provision.

## B. Gurstel's alleged violations of the FDCPA pursuant to 15 U.S.C. § 1692c(c): Failure to cease communication with a consumer after cease and desist request

Plaintiff Isham also requests summary judgment with respect to Gurstel's alleged FDCPA violations of 15 U.S.C. § 1692c(c).[2] Section 1692c(c) states:

(c) Ceasing communication—if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . .

15 U.S.C.A. § 1692c(c) (West 2010). Section 1692c(c) also provides that such notice from a consumer is "complete upon receipt." *Id.*

As discussed above, it is undisputed that Gurstel received Isham's 12/06/08 typed letter. (Doc. # 45, Exhibit G). This letter specifically references her first letter, stating, "Attached is the copy of the letter that was sent on 11/16/08." (Doc. # 45, Exhibit D). Isham also affirmed in her affidavit that she attached a copy of the 11/16/08 letter to the 12/06/08 mailing. (Doc. # 45, Exhibit A, ¶ 20). Furthermore, Isham's 12/06/08 letter stated, "Kindly don't bother me anymore." (Doc. # 45, Exhibit D). The Court finds that this language amounts to a request to cease. communication. Because Gurstel stipulates that it received the 12/06/08 let-

2. Because the Court already determined that there is an issue of fact as to whether Gurstel received Isham's 11/16/08 letter before the

11/21/08 and 11/25/08 calls were made, it will only address the alleged § 1692c(c) violations with respect to the 4/06/09 and 4/08/09 calls.

ter, and notice is complete upon receipt under this section of the statute, Gurstel was required to stop all communications with Isham as of 12/08/08.

In light of these findings, Gurstel's 04/06/09 and 04/08/09 calls to Isham in pursuit of debt collection constitute FDCPA violations of § 1692c(c). Gurstel argues that notice was not sufficient because the paralegals handling Isham's account did not receive *actual* notice. However, to find notice and liability under this part of the statute, a finding of mail receipt is sufficient. Therefore, Gurstel is liable for these violations of § 1692c(c), and Isham is entitled to judgment on this issue as a matter of law.

If the 12/06/08 letter did in fact contain a copy of Isham's first letter, it is even clearer that Gurstel's April 2009 communications violated the FDCPA pursuant to § 1692c(c). In the 11/16/08 letter, Isham disputes the entire debt, states that it was the result of credit card fraud, and demands that Gurstel *not call, harass, write or in any way try to collect on this debt. I do not owe it.* (Doc. # 45, Exhibits C & D). The "cease and desist" language is plain, and no reasonable jury could find otherwise.

## C. Gurstel's alleged violations of the FDCPA pursuant to 15 U.S.C. § 1692e(10): False and misleading statements to consumer

In addition, Plaintiff Isham requests summary judgment for Gurstel's alleged FDCPA violation of 15 U.S.C. § 1692e(10). Section 1692e(10) states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt ... [T]he following conduct is a violation of this section ... (10) The use of *any* false representation or deceptive means to collect or attempt to collect any debt or to obtain informa-

tion concerning a consumer (emphasis added).

15 U.S.C.A. § 1692e(10) (West 2010).

■ The test for determining whether a communication violates § 1692e is an objective standard based on the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 61 (2d Cir.1993); *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 592 (6th Cir.2009); see *Teng v. Metro. Retail Recovery Inc.,* 851 F.Supp. 61, 65 (E.D.N.Y. 1994). The "least sophisticated consumer" standard protects the "naïve and trusting" consumer while shielding debt collectors "against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon,* 988 F.2d at 1320.

■ In the Ninth Circuit, the standard to determine whether a communication is deceptive or misleading under § 1692e(10) is whether the "least sophisticated consumer" could have been deceived or misled. *Wade v. Reg'l Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir.2010); see *Swanson v. S. Or. Credit Serv., Inc.,* 869 F.2d 1222, 1227 (9th Cir.1988). To answer this inquiry, the Ninth Circuit recently adopted a "materiality" approach used by the Sixth and Seventh Circuits. Under this rule, "false but nonmaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue,* 592 F.3d at 1033; see *Hahn v. Triumph P'ships, LLC,* 557 F.3d 755, 757 (7th Cir.2009). In other words, the alleged falsity of a statement must actually distort the consumer's perception, not a minor technical glitch that even the least sophisticated consumer could understand.

The court in *Donohue* agrees with the Seventh Circuit's decision in *Hahn:* the

purpose of the FDCPA, " '[providing] information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).' " *Donohue,* 592 F.3d at 1033 (quoting *Hahn,* 557 F.3d at 757–58); *see Clark,* 460 F.3d at 1179 (holding that FDCPA's remedial purpose is animated by "the likely effect of various collection practices on the minds of unsophisticated debtors"). Thus, this Court will consider Isham's motion for partial summary judgment as to the § 1692e(10) claim using the "least sophisticated consumer" materiality requirement to best uphold the fundamental purpose of the FDCPA.

■ Here, Isham asserts that during the 04/08/09 call, Gurstel told her the firm was retained by NCO (another third-party debt collector). (Doc. # 1, Complaint, ¶ 38). However, the November 2008 collection notice states that Gurstel represents FIA Card Services, N.A. (Doc. # 45, PSOF ¶ 33). Gurstel denies sufficient knowledge as to whether the collection agent made the alleged statement to Isham on 04/08/09. (Doc. # 5, ¶ 38). Gurstel also affirms that FIA retained the firm, but FIA used NCO to conduct communications between Gurstel and FIA. Because both FIA and NCO concerned the same debt and collection efforts, Gurstel argues that the alleged contradictory statement on 04/08/09 was "trivial."

In contrast, Isham argues that this distinction in creditor identities was not a "trivial" technicality. (Doc. # 74, pg. 8). To preserve the protections and policies of the FDCPA, it is important to know the proper identity of the creditor. Knowing a creditor's identity allows the "least sophisticated consumer" to make more informed decisions on how to communicate with the

creditor and avoid being misled. At the time Isham received Gurstel's initial communications in November 2008, she was already involved in litigation with another third-party collector over the same debt. Thus, it would be important for Isham to know both in November 2008 and April 2009 whether it was the same creditor or a different creditor who was trying to collect this debt.

Thus far, Isham has failed to produce any evidence besides her deposition testimony and affidavit to confirm that Gurstel told her it was retained by NCO rather than FIA. Although she claims she recorded most of the 04/08/09 call, no such recording has been provided to date. Thus, it is possible that a reasonable jury could find judgment for Gurstel on the § 1692e(10) claim. The Court accordingly denies partial summary judgment for Isham on this issue. However, analyzing this claim in light of the "least sophisticated consumer" standard, the Court will also deny summary judgment for Gurstel on this same issue. Although no independent proof of Gurstel's alleged false statement on 04/08/09 exists in the record, a reasonable jury could find judgment for Isham based on Isham's sworn testimony and the materiality of the alleged misleading statement upon her ability to intelligently interact with Gurstel. Because an issue of material fact exists on this claim, summary judgment for Gurstel is precluded.

**D. Gurstel's alleged violations of the FDCPA pursuant to 15 U.S.C. § 1692g(b): Continuing to collect a disputed debt without first providing verification of the debt to the consumer.**

Finally, Plaintiff Isham requests summary judgment for Gurstel's alleged FDCPA violation of 15 U.S.C. § 1692g(b). Section 1692g(b) states:

Validation of Debts—(b) Disputed debts—If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector . . .

15 U.S.C.A. § 1692g(b) (West 2010).

█ As the Court has already noted, Isham's 11/16/08 letter clearly disputed the debt. While Gurstel denies that it ever received this letter, and Isham has no independent proof that Gurstel received it, Gurstel stipulated that it did receive Isham's 12/06/08 letter. Isham affirms that the 12/06/08 specifically referenced her 11/16/08 letter and that she attached a copy of it to the 12/06/08 mailing. Given that Gurstel received the 12/06/08 with the attachment, it was required to cease communications with Isham.

This Court and other circuits have held that the FDCPA allows a collection agency to respond to a request for debt verification by ceasing all collection activity without verifying the debt. *Tashquinth v. U.S. Collections W., Inc., et al.,* CIV 05–0410–PHX–DKD (D.Ariz.2006) (holding that debt collector did not violate the FDCPA by failing to provide plaintiff with verification of his debt because it ceased all communications upon receipt of plaintiff's dispute); *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1031–32 (6th Cir.1992) (finding that debt collector did not violate the FDCPA by failing to verify the consumer's debt in response to his request for verifica-

tion because the debt collector ceased collection activity after receiving the request); *Jang v. A.M. Miller,* 122 F.3d 480, 483 (7th Cir.1997) (holding that collection agencies did not violate the FDCPA by not sending the requested verification because the agencies ceased all collection activity after the consumer requested verification).

These cases, however, are all distinguishable from Isham's case. Although Gurstel could have chosen to not send verification of the debt to Isham after receiving her 12/06/08 letter, this choice would have required that it stop all communications with her. Gurstel failed to do this. There is no question that Gurstel called Isham on 04/06/08 to collect upon the same debt. At this point, Gurstel had already received timely notice of the dispute, but did not send Isham verification of the debt's validity. Gurstel did cease all communications for approximately four months. Unfortunately, the FDCPA is a strict liability statute, so Gurstel's recommencement of collection activities without verification violated 15 U.S.C. § 1692g(b) as a matter of law. Thus, the Court grants partial summary judgment for Isham on this issue, and accordingly denies Gurstel's motion for summary judgment on this same issue.

## II. Gurstel's Bona Fide Error Defense

In its motion for summary judgment, Gurstel argues that plaintiff's claims are barred, in whole or in part, because any alleged wrongful conduct on the part of the defendant (assumed only for the purpose of this affirmative defense) was unintentional and resulted from a bona fide error. Gurstel further argues that it maintains general and specific policies and procedures to prevent the errors alleged by Isham. The bona fide error exception to liability is explicitly listed within the stat-

ute under 15 U.S.C. § 1692k(c). Section § 1692k(c) states:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.A. § 1692k(c) (West 2010). The bona fide error exception to FDCPA liability is an affirmative defense, with the burden of proof resting upon the defendant. *Fox v. Citicorp Credit Serv., Inc., et al.,* 15 F.3d 1507, 1514 (9th Cir.1994). There are three main prongs that the debt collector must meet: (1) the "no intent" prong, (2) the "bona fide error" prong, and (3) the "procedures" prong. *Id.*

The "no intent" prong is a subjective test. *Welker v. Law Office of Daniel J. Horwitz,* 699 F.Supp.2d 1164, 1171 (S.D.Cal.2010) (quoting *Johnson v. Riddle,* 443 F.3d 723, 728 (10th Cir.2006)) (finding that the "no intent" inquiry is "inherently subjective and 'primarily becomes a credibility question' as to whether the defendant *intended to violate* the FDCPA"). To satisfy this prong, the defendant must only show that the FDCPA violation was unintentional, not that the act itself was unintentional. *Kort v. Diversified Collection Serv., Inc.,* 394 F.3d 530 (7th Cir. 2005); *Welker,* 699 F.Supp.2d at 1171–72. Here, Gurstel argues it unintentionally violated the FDCPA due to what it terms a "clerical error"—losing a piece of mail. Gurstel argues that except for this error, its employees always followed proper procedures with regard to Isham's file. Gurstel also stated that it is not aware of any other mail being lost at its Arizona office besides Isham's letter. Gurstel also employs extensive FDCPA compliance procedures which are demonstrated in the record by their detailed employee manuals, affidavits and deposition testimony. Employees are specifically trained in FDCPA compliance, are tested on the FDCPA, and are periodically reviewed to ensure that FDCPA compliance is upheld. Gurstel even has a FDCPA Compliance Committee whose purpose is to conduct any investigation into alleged FDCPA violations and update Gurstel's compliance procedures as the FDCPA develops. Clearly Gurstel makes a strong effort to avoid violating the FDCPA. Thus, this Court finds that Gurstel did not subjectively intend to violate the FDCPA in Isham's case.

However, the Ninth Circuit holds that the "bona fide error" and "procedures" prongs are objective tests. *Welker,* 699 F.Supp.2d at 1171–72 (citing *Johnson,* 443 F.3d at 729). To satisfy the "bona fide error" prong, the debt collector must demonstrate that the error was a *genuine* mistake, not a contrived mistake. *Kort,* 394 F.3d at 538. Looking at the record objectively, the Court finds that Gurstel's undisputed conduct before and after the mail error shows that the error was not contrived. Beyond the certified mail return receipt, there is no firm evidence that anyone at Gurstel actually knew about the lost letter. Immediately after Gurstel learned of the error, it appropriately restricted Isham's file and added her attorney's contact information to its records.

Gurstel also testified that it genuinely believed Isham was unrepresented when it contacted her in April 2009. In his affidavit, Brian Kingsley (Collections Lead) affirmed that he only decided to take the "XATTY" code off of Isham's file in April 2009 because Gurstel had no record that Isham ever responded to the firm's request for her attorney's information. Gurstel waited well beyond the requested ten days for this type of response. Based on this evidence, the Court finds that Gurstel made a good faith error when it lost the

letter and thus satisfies the "bona fide error" prong of the defense.

■ The "procedures" prong, however, is where Gurstel falls short. To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to "maintain procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and itemization." *Reichert,* 531 F.3d at 1007. Generally the defense " 'applies almost exclusively to clerical errors which somehow manage to slip through procedures designed to catch them.' " *Gostony v. Diem Corp.,* 320 F.Supp.2d 932, 946 (D.Ariz.2003) (quoting *Irwin v. Mascott,* 112 F.Supp.2d 937, 959 (N.D.Cal. 2000)).

■ The Ninth Circuit uses a two-step process to determine whether the "procedures" prong is met in any given case. *Reichert,* 531 F.3d at 1006. First, the debt collector must " '[maintain]—i.e., actually [employ] or [implement]—procedures to avoid errors.' " *Id.* (quoting *Johnson,* 443 F.3d at 729). Second, the procedures must be " 'reasonably adapted' to 'avoid the *specific error* at issue.' " *Id.* (emphasis added). Whether the procedures were "reasonably adapted" is " 'a fact-intensive question' ", implying that it is usually a question for the fact finder. *Id.* (quoting *Wilhelm v. Credico Inc.,* 519 F.3d 416, 421 (8th Cir.2008)). Additionally, the "reasonably adapted" requirement means that debt collectors do not have to take "every conceivable precaution" to avoid errors; it only requires "reasonable precaution." *Kort,* 394 F.3d at 539 (citing *Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir.2004)). Finally, to give the bona fide error defense meaning in the context of strict liability, a showing of "reasonably adapted" procedures requires "more than a mere assertion to that effect." *Reichert,* 531 F.3d at 1007. The defendant must not only explain the procedures, but also show *how* they were adapted to avoid the particular error in question. *Id.*

■ Despite Gurstel's showing of elaborate FDCPA compliance and office procedures, it fails to demonstrate procedures "reasonably adapted" to the specific error that caused it to violate the FDCPA in Isham's case—mishandling and loss of consumer mail. Gurstel argues that its staff always followed the same mail-handling procedures during the time in question (November and December 2008). It also provides copies of its procedure manuals which specifically mandate FDCPA compliance and outline the extensive computer-automation process for each account. In addition, Gurstel provides affidavits of its paralegals who describe the scanning and input process of any documents related to a consumer's account. Gurstel stresses that these collective procedures and frequent supervisory review would signal any account errors related to communications from the consumer. It claims that its automated computer system would signal a red flag if anything were missing from the account record.

Still, a problem remains: if Gurstel loses the mail upon initial physical receipt, how could anyone who is reviewing the file know if something was inputted incorrectly into the computer system or not inputted at all? During the relevant time period, there were no written procedures in any of the employee manuals which outlined proper mail handling. Gurstel's office administrator, Schelley Hagerman, testified that she always followed the same procedure for mail handling during November 2008. She admitted that certified mail could be signed for and received by anyone in the office. However, Hagerman affirmed that everyone knew she was in charge of sorting the mail, and would put it on her desk. Then Hagerman would disperse it to the appropriate paralegals.

However, Gurstel also stipulates that no one besides Hagerman supervised mail receipt and handling. Mail logs were not maintained for First Class or Certified mail, so there is no way to confirm that a piece of mail was properly received and handled during the November and December 2008 time period. During this time, Gurstel had no policy or procedure in place to verify whether the proper notations from a consumer's letter are actually entered by the paralegal. No record was kept as to who scanned the letter, whether it was properly scanned, or whether the letter was associated with the proper file in the computer system. Also, Hagerman testified that there are no electronic codes entered when Gurstel receives a letter from a consumer stating that she refuses to pay the debt. Finally, all consumer documents are promptly shredded after being scanned.

Although Gurstel was not required to take every perceivable precaution when handling mail, a mail log is a procedure which could have been easily implemented to avoid the error in question without placing a huge burden on Gurstel. Gurstel even showed that mail logs were not a huge burden upon the company when it implemented an electronic mail log for certified mail in April 2009. Had this type of mail log been in place during November and December 2008, Isham's letter would be properly accounted for. This would have put Gurstel on notice of Isham's attorney representation, and prevented it from making further contact with her.

Upon review, this Court finds that no reasonable jury could find that Gurstel employed "reasonably adapted" mail-handling procedures to satisfy the bona fide error defense. Although Gurstel explained its mail-handling and FDCPA compliance procedures in detail, it failed to show that these procedures actually addressed the relevant error in practice.

Failing to account for Isham's 12/06/08 letter was not an excusable "clerical" error since the mail-handling procedures could not effectively account for incoming consumer mail.

Gurstel knows that the proper handling of consumer mail and communications is fundamental to ensuring the accuracy of the electronic debtor accounts. For example, if a "cease and desist" letter is lost, the paralegal will never enter the appropriate code into the account to block further communications with the debtor. This failure may lead to FDCPA violations, which is exactly what happened in Isham's case. Gurstel's reliance on the competence of a *single person*, Schelley Hagerman, to properly intake and code the file is not sufficient. *Gathuru v. Credit Control Serv., Inc.*, 623 F.Supp.2d 113, 123 (D.Mass.2009) (holding that company's reliance on a single person to make collection balance calculations, "no matter how well-trained and knowledgeable" that person may be, is insufficient to establish the bona fide error defense to an FDCPA violation). Because the defendant has not shown by a preponderance of the evidence that it maintains procedural safeguards or that any errors made were clerical, it has failed to establish the bona fide error defense. Thus, summary judgment for Gurstel as to this defense is denied as a matter of law.

## CONCLUSION

The Court finds that Gurstel did violate the FDCPA because it failed to cease communication with Isham after she gave the firm verbal and written notice that she was represented by an attorney. Gurstel also violated the FDCPA by continuing to contact Isham after she notified Gurstel in writing that she disputed the debt, refused to pay, and demanded that the firm cease all communications with her. Because the FDCPA is a strict liability statute, a single

violation of the Act invokes statutory liability upon the debt collector. As a matter of law, the Court finds that Plaintiff Isham has met all of the essential elements of her FDCPA liability claim and is therefore entitled to damages. Furthermore, the Court finds that Gurstel failed to satisfy the requirements of the bona fide error defense, and therefore will not be excused from FDCPA liability as a matter of law.

**IT IS THEREFORE ORDERED GRANTING IN PART and DENYING IN PART** Plaintiff Dorothy L. Isham's Motion for Partial Summary Judgment as to Defendant's FDCPA liability. (Doc. # 44).

(1) Partial summary judgment is **GRANTED** for Plaintiff's **15 U.S.C. § 1692c(a)(2) claim** (unlawful communication with a consumer who is represented by an attorney).

(2) Partial summary judgment is **GRANTED** for Plaintiff's **15 U.S.C. § 1692c(c) claim** (failure to cease communication with a consumer after cease and desist request).

(3) Partial summary judgment is **DENIED** for Plaintiff's **15 U.S.C. § 1692e(10) claim** (false and misleading statements to consumer).

(4) Partial summary judgment is **GRANTED** for Plaintiff's **15 U.S.C. § 1692g(b) claim** (continuing to collect a disputed debt without first providing verification of the debt).

**IT IS FURTHER ORDERED DENYING** Defendant Gurstel, Staloch & Chargo, P.A.'s Cross–Motion for Summary Judgment because it violated the FDCPA as a matter of law and failed to meet its burden under the bona fide error defense. (Doc. # 46).

**IT IS ALSO ORDERED** that Plaintiff and Defendant submit a Status Memorandum by the end of July discussing how they would like to proceed on the remaining claims.